UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    Plaintiff,<br><br>    v.<br><br>THE GEORGE WASHINGTON UNIVERSITY,<br>    Defendant. | Civil Action No. 17-1978 (CKK) |

**MEMORANDUM OPINION**
(May 8, 2019)

Plaintiff United States Equal Employment Opportunity Commission ("EEOC" or the "Commission") has brought this action to challenge alleged sex discrimination by Defendant The George Washington University (the "University") pursuant to the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) ("EPA"), and Title VII of the Civil Rights of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The director of the University's Athletics Department allegedly gave preferential treatment to a male staff member compared with a female executive assistant.

Presently pending is the University's motion to dismiss this case for failure to state a claim. In the alternative, the University requests an order compelling the Commission to engage in further conciliation and a stay pending completion of that process. Upon consideration of the briefing,[1]

---

[1] The Court's consideration has focused on the following documents:

- Mem. of Law in Supp. of Mot. of Def. The George Washington University to Dismiss the Compl. or, Alternatively, Stay Proceedings, ECF No. 10-1 ("Def.'s Mem.");
- EEOC's Mem. of P&A in Opp'n to Def.'s Mot. to Dismiss, ECF No. 15 ("Pl.'s Opp'n"); and
- Reply Mem. of Law in Supp. of Mot. of Def. The George Washington University to Dismiss the Compl. or, Alternatively, Stay Proceedings, ECF No. 17 ("Def.'s Reply").

1

the relevant legal authorities, and the record as a whole, the Court **DENIES** the [10] Motion of Defendant The George Washington University to Dismiss the Complaint or, Alternatively, Stay Proceedings.

## I. BACKGROUND

The Court shall rely on the allegations in the Commission's [1] Complaint to summarize the pertinent factual background, reserving further elaboration to pertinent portions of this Memorandum Opinion.

Sara Williams was hired in August 2014 as the Executive Assistant to Patrick Nero, the University's Director of Athletics. Compl., ECF No. 1, ¶ 14.[2] In this capacity, Ms. Williams' work included, *inter alia*, "providing high-level administrative support" to Mr. Nero and "serving on the senior staff of the Department of Athletics." *Id.* ¶ 15.

The gravamen of this case dates to September 2015, when Michael Aresco "began performing work in the Administrative Suite of the Office of the Director of Defendant's Athletics Department." *Id.* ¶ 18. Although the briefing touches on Mr. Aresco's title at the time,[3] the Complaint does not. Rather, the Commission simply states that Mr. Aresco "had not [previously] been employed by Defendant in any administrative position." *Id.* ¶ 19. Once Mr. Aresco started contributing within the Administrative Suite, Mr. Nero "treated [him] more favorably than [Ms. Williams], because of sex," as evidenced by opportunities given to him while Ms. Williams was

---

[2] Evidently Ms. Williams used her maiden name, Sara Mutalib, in proceedings before the Commission. Pl.'s Opp'n at 2 n.1.

[3] The Court shall evaluate the sufficiency of allegations in the Complaint without relying on factual details supplied in the parties' briefing. *See, e.g.*, *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014) (Kollar-Kotelly, J.) (prohibiting plaintiff from effectively amending its pleading by means of briefing), *aff'd sub nom. Kingman Park Civic Ass'n v. Bowser*, 815 F.3d 36 (D.C. Cir. 2016).

"minimiz[ed]" and "requir[ed] . . . to train Aresco," "perform job duties that Aresco either failed to perform or was incapable of performing," and do "tasks such as running personal errands." *Id.* ¶ 20.

In January 2016, the University advertised a new position in its Athletics Department. *See id.* ¶¶ 22, 25. Based on the job posting, this Special Assistant's duties would consist of "work . . . substantially equal to the work that [Ms. Williams] performed." *Id.* ¶ 24. But unnamed "personnel" at the University effectively informed Ms. Williams that the job was off limits to her, for the "the Special Assistant position had been created for Aresco, and . . . it already had been decided to hire him for that position." *Id.* ¶ 25. Whether in that way or by unspecified other means, the University "dissuaded and deterred [Ms. Williams] from applying" for the job, despite her qualifications therefor, and Mr. Aresco was indeed "selected" that same month. *Id.* ¶¶ 26-28. Whereas Ms. Williams' annual salary as Executive Assistant fell between $38,500 and $40,000, Mr. Aresco initially was paid approximately $77,500 per year as Special Assistant and later was awarded raises. *Id.* ¶¶ 17, 29.

Ms. Williams turned to the Commission to pursue EPA and Title VII claims against the University. *Id.* ¶ 8. Upon finding reasonable cause for her claims, the Commission issued a Letter of Determination to the University and proposed joint efforts to conciliate. *Id.* ¶ 9. Despite communicating thereafter with the University, the Commission ultimately determined that it "was unable to secure from [the University] a conciliation agreement acceptable to the Commission" and sent a Notice of Failure of Conciliation on July 19, 2017. *Id.* ¶¶ 10-12.

On September 26, 2017, the Commission brought this lawsuit against the University under the EPA and Title VII. Count I alleges that the University paid Ms. Williams "lower compensation than Defendant paid to males to perform substantially equal work," in violation of the EPA. *Id.*

¶ 32. Count II alleges that the University violated Title VII by "engaging in disparate pay practices based on sex"; "failing to provide [Ms. Williams] with promotional opportunities"; "subjecting [Ms. Williams] to disparate terms and conditions of employment"; and "depriving [Ms. Williams] of employment opportunities and advancement because of her sex." *Id.* ¶¶ 37, 38. The Commission seeks a variety of remedies, including an injunction against any similar treatment of the University's other female employees, an order that the University put into place policies that ensure equal employment opportunities for women, and compensation for Ms. Williams. *Id.* (Prayer for Relief).

The University responded to these claims with the pending motion to dismiss. After briefing had concluded, and while the motion remained under advisement, the Court granted the Commission's request for a stay during a partial government shutdown. Min. Order of Dec. 26, 2018. Some time after proceedings resumed, the Court sought an update as to any pertinent developments and/or case law that post-dated briefing of the pending motion. *See* Min. Orders of Jan. 30, 2019, and Apr. 23, 2019. At the Court's instruction, the parties focused on the University's alternative request for a stay pending further conciliation; they did not bring any other developments or case law to the Court's attention. *See* Joint Notice Regarding Case Update, ECF No. 21.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citing, e.g., *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 556, 570; *Erickson*, 551 U.S. at 93. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia, Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)) (internal quotation marks omitted) (alterations in original). "If the district court considers other facts, it must convert the motion to dismiss into a motion for summary judgment and 'provide the parties with notice and an opportunity to present evidence in

support of their respective positions.'" *Id.* (quoting *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011); citing Fed. R. Civ. P. 12(d)).

When considering a motion under Rule 12(b)(6), the court "construe[s] the complaint liberally, grant[ing] plaintiff[ ] the benefit of all inferences that can [reasonably] be derived from the facts alleged." *Sickle v. Torres Advanced Enterprise Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)) (each alteration, except first, in original) (internal quotation marks omitted).

### B. Motion to Stay Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)) (internal quotation marks omitted); *see also Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

A party requesting a stay of proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

## III. DISCUSSION

There is no dispute as to the Court's subject-matter jurisdiction, which is attributable, at the least, to federal questions under the EPA and Title VII. *See* Compl., ECF No. 1, ¶ 1 (citing these grounds, among others); 28 U.S.C. § 1331; 29 U.S.C. § 206(d); 42 U.S.C. § 2000e–2(a)(1).

6

Each of those statutory regimes expressly recognizes jurisdiction in federal district court. *See* 29 U.S.C. §§ 215(a)(2), 217; 42 U.S.C. § 2000e–5(f)(3).

Although the University challenges an aspect of the conciliation process, neither of the parties has framed conciliation as a jurisdictional issue, and the Court is satisfied that it is not. *See EEOC v. MVM, Inc.*, Civil Action No. TDC-17-2881, 2018 WL 1882715, at *2 (D. Md. Apr. 19, 2018) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006); *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir. 2009)); *EEOC v. MJC, Inc.*, 306 F. Supp. 3d 1204, 1211-12 (D. Haw. 2018) (discussing, e.g., *Arbaugh*, 546 U.S. at 515-16). Accordingly, the Court shall not examine any aspect of the Commission's compliance with conciliation other than the specific aspect raised by the University, namely the extent to which the University was sufficiently informed of the claims against it.

### A. Motion to Dismiss for Failure to State a Claim

The Court shall consider whether the Commission has stated a claim under the EPA before turning to its Title VII claim. Extraneous issues that the Court does not address below do not affect its resolution of the pending motion.

1. Equal Pay Act

The EPA generally prohibits discrimination "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for *equal work* on jobs the performance of which requires *equal skill, effort, and responsibility*, and which are *performed under similar working conditions*, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1) (emphasis added). According to the

7

regulations, the work must be "substantially equal" and need not be "identical." 29 C.F.R. § 1620.13(a).

The Complaint straightforwardly pleads that Ms. Williams was paid less as Executive Assistant than Mr. Aresco was paid as Special Assistant for substantially the same job responsibilities. *Compare* Compl., ECF No. 1, ¶ 17 ($38,500-$40,000 paid to Ms. Williams annually), *with id.* ¶ 29 (approximately $77,500 paid to Mr. Aresco annually, prior to raises); *see also id.* ¶ 24 ("The Special Assistant job posting describes work that is substantially equal to the work that [Ms. Williams] performed while she worked for Defendant as the Executive Assistant to the Athletics Director.").

The issue is whether those jobs involved "substantially equal" work demanding "equal skill, effort, and responsibility" and were "performed under similar working conditions." 29 U.S.C. § 206(d)(1); 29 C.F.R. § 1620.13(a). At this stage, the Court need not reach the four exceptions listed at the end of Section 206(d)(1). *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195-97 (1974) (discussing employer's burden under EPA to establish one of these affirmative defenses after plaintiff discharges burden).

The parties vigorously dispute the similarity of the Executive Assistant and Special Assistant roles. But what should be a contest over the sufficiency of allegations in the Complaint has turned into a dispute over ancillary documents. Neither the Executive Assistant job description nor the Special Assistant job posting is attached to the Complaint. The University's brief introduces the former into the record, while the Commission introduces the latter in response. *See* Def.'s Mem. at 5 n.2; Pl.'s Opp'n at 10-11. The Commission raises no objection to the University's assertion that the Executive Assistant description is incorporated by reference into the Letter of Determination and in turn into the Complaint. *See* Pl.'s Opp'n at 8; Def.'s Mem. at 3 n.1; 5 n.2.

The Commission simply submits that any incorporation of the Executive Assistant description would warrant the same treatment for the Special Assistant posting, to which the University does not specifically object. Pl.'s Opp'n at 10-11; Def.'s Reply at 6.

There is sufficient textual basis in the Complaint to find that the Special Assistant job posting is incorporated by reference. The Complaint expressly discusses and accurately quotes from that posting. *See, e.g.*, Compl., ECF No. 1, ¶¶ 22-24. Accordingly, the Court can consider the Special Assistant job posting without converting the pending motion to dismiss into a motion for summary judgment. *See Hurd*, 864 F.3d at 678. Even so, the Court shall refer to that posting only for illustrative purposes; it is not necessary to sustain the allegations in the Complaint.

The Complaint states a description of some of "the work [Ms. Williams] performed" as Executive Assistant, and then asserts that the Special Assistant job posting identifies "substantially equal" work. Compl., ECF No. 1, ¶¶ 15, 24. One look at that job posting confirms that the Special Assistant duties therein are not only substantially equal, but nearly identical, to what Ms. Williams has alleged that she did in her role as Executive Assistant. *Compare* Decl. of Mindy Weinstein, ECF No. 15-1, Ex. B (Ex. 6 at 1), *with* Compl., ECF No. 1, ¶ 15.

The Court need not decide whether the Executive Assistant description is incorporated into the Complaint, because the Court does not rely on that document to decide the pending motion. The extent to which Ms. Williams' alleged duties—or the Special Assistant job posting itself—differ from the Executive Assistant job description does not matter, at least at this stage. Regardless of whether the substantially equal work is "formally assign[ed]"—in Ms. Williams' job description, for example—"the EPA applies if the employer *knowingly allows* the employee to perform the [substantially] equal work." 29 C.F.R. § 1620.13(a) (emphasis added). This is not the stage to assess whether the University knew what Ms. Williams was doing; it suffices to say

that the job description attached to Ms. Williams' title is not controlling where her alleged duties in practice may differ. Nor, at least right now, must the Court decide whether Ms. Williams' duties as Executive Assistant were greater than those of Mr. Aresco as Special Assistant.

It is sufficient for the Commission to plead that Ms. Williams and Mr. Aresco performed substantially equal work—and yet were paid differently—without getting into the "equal skill, effort, and responsibility" or "similar working conditions" aspects of Section 206(d)(1). "At the motion to dismiss stage, the district court cannot throw out a complaint even if the plaintiff did not plead the elements of a prima facie case." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002)). The Court concludes that the Commission has sufficiently pled a violation of the Equal Pay Act.

2. Title VII of the Civil Rights Act

Under Title VII, an employer must not "fail or refuse to hire or . . . discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "This statutory text establishes two elements for an employment discrimination case: (i) the [complainant] suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." *Brady*, 520 F.3d at 493.

"An 'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). In several cases concerning lateral transfers—which do not appear on this illustrative list of adverse actions—the

Court of Appeals has held that the plaintiff must demonstrate "some other materially adverse consequence affecting the terms, conditions, or privileges of employment or future employment opportunities, whereby a reasonable trier of fact could find that [the complainant] suffered objectively tangible harm." *Ortiz-Diaz v. U.S. Dep't of Housing & Urban Dev., Office of Inspector Gen.*, 867 F.3d 70, 73-74 (D.C. Cir. 2017) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)).

As with the EPA claim, the Court cannot hold the Commission to the burden of pleading a prima facie case under Title VII—to the extent that the prima facie step even remains relevant for Title VII claims in this Circuit. *See Brady*, 520 F.3d at 493-94 (citing *Swierkiewicz,* 534 U.S. at 510-11); *Swierkiewicz*, 534 U.S. at 510 ("The prima facie case under *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] . . . is an evidentiary standard, not a pleading requirement."). Rather than requiring "heightened pleading" for discrimination cases, the Supreme Court has made clear that the generally applicable plausibility standard governs in this setting as well. *See, e.g.*, *Twombly*, 550 U.S. at 569-70 (citing *Swierkiewicz*, 534 U.S. at 508, 512); *EEOC v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) ("*Twombly*'s endorsement of *Swierkiewicz* mandates, at a minimum, that *Swierkiewicz*'s rejection of a heightened pleading standard in discrimination cases remains valid.").

The Commission has plausibly pled a course of preferential treatment for Mr. Aresco, to the detriment of Ms. Williams, that supports a reasonable inference of "materially adverse" effects on Ms. Williams' career in the Athletics Department resulting in "objectively tangible harm." *Ortiz-Diaz*, 867 F.3d at 73. Whereas the Commission's EPA claim focuses on a point-in-time comparison between Ms. Williams' and Mr. Aresco's pay, the Title VII claim relies on the University's activity before, during, and after the process of selecting Mr. Aresco for the Special

Assistant role. "[C]onstru[ing] the complaint liberally," the Court finds that the Complaint contains sufficient factual content to permit "the reasonable inference that the [University] is liable for the misconduct alleged." *Sickle*, 884 F.3d at 345; *Ashcroft*, 556 U.S. at 678.

Turning to the allegations, the Complaint suggests that Ms. Williams performed at a rather sophisticated level in her Executive Assistant role, at least prior to Mr. Aresco's arrival in the Administrative Suite. The non-exhaustive list of her work included:

(a) providing high-level administrative support to the Director of Athletics;
(b) leading the administrative function of the Office of the Director of Athletics;
(c) coordinating administrative staff members;
(d) maintaining the external face of the Office of the Director of Athletics;
(f) [sic] acting as liaison to external departments for administrative and operational matters;
(g) acting as project manager for special projects in support of key priorities for the Department of Athletics; and
(h) serving on the senior staff of the Department of Athletics.

Compl., ECF No. 1, ¶ 15. But that began to change when Mr. Nero enlisted Ms. Williams in effectively "grooming" Mr. Aresco for the role that she had been fulfilling. Pl.'s Opp'n at 5; *see also* Compl., ECF No. 1, ¶¶ 20, 24. Presumably due to Mr. Aresco's lack of experience in an administrative capacity at the University, Ms. Williams had to "train" Mr. Aresco and to "perform job duties that [he] either failed to perform or was incapable of performing." Compl., ECF No. 1, ¶¶ 19, 20. Meanwhile, Mr. Nero "minimiz[ed]" Ms. Williams, *id.*, ostensibly to make way for Mr. Aresco. That reduction in Ms. Williams' status consisted at the least of "assigning her to tasks such as running personal errands." *Id.* Mr. Nero also "enhance[d] Aresco's importance and future opportunities"; "provid[ed] promotional opportunities to Aresco"; "and otherwise favor[ed] Aresco to [Ms. Williams'] detriment." *Id.*

Several allegations about the Special Assistant job posting further demonstrate preferential treatment of Mr. Aresco. According to unspecified University "personnel," the Special Assistant

12

job was "created for" Mr. Aresco, and "it already had been decided to hire him for that position" before it was posted in January 2016. *Id.* ¶¶ 22, 25. Ms. Williams was "dissuaded and deterred" by the University "from applying" for the new role, *id.* ¶¶ 22, 25, presumably because of the personnel's comments. And in turn Mr. Aresco was given the position of Special Assistant. *Id.* ¶ 28. All of this despite Ms. Williams' qualifications for the role and the fact that she performed work "substantially equal" to the duties listed in the job posting. *Id.* ¶¶ 15, 24, 27.[4]

The Complaint does not detail Ms. Williams' experience after Mr. Aresco became Special Assistant. But what it does say supports the discrimination claim. First, Mr. Aresco's starting salary was roughly double Ms. Williams' salary for substantially equal work. *Id.* ¶¶ 17, 24, 29. Second, Mr. Aresco was given raises on top of that inflated salary. *Id.* ¶ 29. Lastly, albeit more generically, were the ongoing effects:

> After Defendant and Nero provided Aresco with employment opportunities, advancement, and other preferential treatment, including but not limited to paying him more than [Ms. Williams] to work as the Special Assistant to the Athletics Director, *such preferential treatment continued to adversely impact [Ms. Williams'] compensation rate and opportunities for advancement*.

*Id.* ¶ 30 (emphasis added).

The Court of Appeals has indicated that "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (collecting cases). But that court has also stated—more broadly—that "materially adverse consequence[s] affecting the terms, conditions, or privileges of employment or future employment opportunities" can suffice. *Ortiz-Diaz*, 867 F.3d at 73-74; *Forkkio v. Powell*, 306 F.3d 1127, 1130-

---

[4] The Commission denies that the Special Assistant job would have been a promotion for Ms. Williams. Pl.'s Opp'n at 24. There is no need to evaluate that position at this time.

31 (D.C. Cir. 2002) (same). The changes in Ms. Williams' assignments—to include running personal errands—did not stand alone; rather, they were part of a course of preferential treatment that plausibly inflicted tangible harm on Ms. Williams' then-present and future opportunities in the office, including the deprivation of a job paying double for the same or similar work.

The Commission attributes the preferential treatment in this case to Mr. Nero's gender-based discrimination and rejects a non-discriminatory explanation as pretextual. *See* Compl., ECF No. 1, ¶¶ 20, 21, 37-39. Although the Complaint does not offer much factual support, "[m]erely alleging that the employer's proffered reasons for the adverse employment actions is [sic] false may support an inference of discrimination sufficient to survive a motion to dismiss." *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 90-91 (D.D.C. 2009) (citing *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). In Mr. Aresco, the Commission has identified a male comparator to illustrate the allegedly discriminatory treatment. And the Commission rebuts unspecified, non-discriminatory justifications for "favorable treatment" of Mr. Aresco by flagging Mr. Nero's "pattern of using power granted to him by Defendant to gain access, and provide preferential treatment, to males and to minimize or oppose those who are entitled to equal treatment or do not support his inappropriate or discriminatory conduct." Compl., ECF No. 1, ¶ 21. While this "pattern" lacks supporting details, the Court finds the low pleading threshold to be satisfied.

The Court's finding of sufficient allegations is consistent with other cases in this Circuit.[5] For example, in *McManus v. Kelly*, the plaintiff successfully stated a Title VII discrimination claim where she allegedly had trained people of lesser experience whose subsequent applications for internal jobs were preferred to hers. 246 F. Supp. 3d 103, 112-13 (D.D.C. 2017). Similarly, Ms.

---

[5] Although some of the cases in this paragraph and the following one contain discrimination claims under multiple statutes, the Court focuses here on the Title VII claims.

Williams alleges, in effect, that she trained Mr. Aresco—who was new to the Administrative Suite—for a job that she was dissuaded from applying for because he reportedly was pre-selected. By contrast, in *Bruder v. Chu*, allegations of not receiving "the types of assignments [the plaintiff] wanted" were insufficient to support a Title VII discrimination claim because he had not demonstrated "any monetary loss or material change in the terms of his employment," including any "loss of . . . promotion possibilities." 953 F. Supp. 2d 234, 240-41 (D.D.C. 2013) (citing, e.g., *Mungin*, 116 F.3d at 1557). Ms. Williams' grievance rises above dissatisfaction with the work she was given, including the assignment of personal errands; she clearly alleges that she lost opportunities, such as the better-paying role given to Mr. Aresco that involved substantially equal work.

The Court also distinguishes several of its own recent decisions. In *Stewart v. FCC*, the plaintiff allegedly was "told [that] she was responsible for certain administrative assignments" that were "actually the responsibility of a different, male employee," but this was not sufficient evidence of an adverse employment action to state a Title VII discrimination claim. 177 F. Supp. 3d 158, 171 (D.D.C. 2016) (Kollar-Kotelly, J.) (citing, e.g., *Mungin*, 116 F.3d at 1557). Whereas Ms. Williams not only was given duties to which she evidently objected—e.g., the personal errands—but she plausibly pled more generally that her role was minimized in favor of a specific colleague's advancement. In *Jones v. Castro*, on the other hand, the Court rejected a generic allegation that the defendant's actions had "ended any chance for career advancement." 168 F. Supp. 3d 169, 182 (D.D.C. 2016) (Kollar-Kotelly, J.) (citation and internal quotation marks omitted). With respect to that contention, the plaintiff in *Jones* had not made any non-conclusory allegations of objectively tangible harm to support his Title VII discrimination claim. *Id.* at 182-83 (citing, e.g., *Forkkio*, 306 F.3d at 1130-31). Here, the Commission has identified a specific lost

opportunity—the Special Assistant role—that, even if it was not strictly a promotion, certainly entailed far better pay than Ms. Williams' Executive Assistant job.

Further evidence likely would be necessary to survive summary judgment. But, for now, the Commission's Complaint contains the "short and plain statement" necessary to place the University on notice of its Title VII claim. Fed. R. Civ. P. 8(a)(2); *see Twombly*, 550 U.S. at 555.

### B. Motion to Stay Proceedings

In the alternative, the University seeks an order compelling the Commission to fulfill its conciliation obligation, as well as a stay of this case pending such conciliation. The University argues that the Commission did not fulfill this obligation because it did not identify certain "record evidence" on which it relied, for example, in determining that Ms. Williams "was deterred from submitting an application in response to the Special Assistant posting, and that it would have been futile for her to do so." Def.'s Mem. at 21-23 (quoting Decl. of Matthew S. Rozen, ECF No. 10-2 (Determination, Ex. 1, at 2)) (internal quotation marks omitted). But the University has not established that it is entitled to any further information during conciliation.

The Commission's precedent indicates that the EPA claim is not subject to a conciliation requirement. *See* Pl.'s Opp'n at 29-30 (citing, e.g., *Cty. of Washington v. Gunther*, 452 U.S. 161, 175 n.14 (1981); *Ososky v. Wick*, 704 F.2d 1264, 1266 (D.C. Cir. 1983)). Nor does the University offer any authority to the contrary. *See, e.g.*, Def.'s Reply at 25 (urging the irrelevance of the Commission's argument, "even if true," because Title VII claim requires conciliation).

As to the Title VII claim, under *Mach Mining, LLC v. EEOC*, the Court may review the Commission's conciliation efforts to only a limited degree. 135 S. Ct. 1645 (2015). Pursuant to 42 U.S.C. § 2000e–5(b), when "the Commission determine[d] after [its] investigation that there is reasonable cause to believe that the charge [filed by Ms. Williams] is true," the Commission was

16

obligated to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." If, in "narrow" circumstances, the Court finds that those conciliation efforts were lacking, then "the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance," which may warrant a stay to facilitate those further proceedings. *Mach Mining, LLC*, 135 S. Ct. at 1656 (citing 42 U.S.C. § 2000e–5(f)(1)).

The circumscribed scope of the Court's involvement is particularly relevant here, where the University challenges the Commission's communications. While "a reviewing court must ensure that the EEOC complied with statutory conciliation requirements at least to the degree that it communicated to the employer that an unlawful employment practice had been alleged and [that the EEOC had] engaged the employer in some form of discussion," that the "court may not do a 'deep dive into the conciliation process.'" *Ryskamp v. Comm'r of IRS*, 797 F.3d 1142, 1149-50 (D.C. Cir. 2015) (quoting *Mach Mining, LLC*, 135 S. Ct. at 1653; citing *id.* at 1653-56). The Commission has "extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case." *Mach Mining, LLC*, 135 S. Ct. at 1649.

Amongst those discretionary decisions is the Commission's authority to decide whether to "lay all its cards on the table." *Id.* at 1654. Surely one of those cards is any specific information the Commission may possess about the University's alleged dissuasion of Ms. Williams' application.

At least as far as the content of its conciliation—the only issue here—the Commission appears to have met its obligation to conciliate the Title VII claims. The Commission did, as it "must[,] inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of 'reasonable cause.'" *Id.* at 1655-56 (quoting 42 U.S.C.

17

§ 2000e–5(b)). "Such notice properly describes both what the employer has done and which employees . . . have suffered as a result." *Id.* at 1656. The Supreme Court has observed that "[a] sworn affidavit from the EEOC stating that it has performed the obligations" set forth in *Mach Mining* "but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." *Id.* (citing *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014)). The Commission has furnished such an affidavit in this case. *See* Decl. of Mindy Weinstein, ECF No. 15-1.

While the University challenges the Commission's assessment of its own compliance, the University has not provided the "credible evidence" necessary to show that the Commission "did not provide the requisite information about the charge," and thereby trigger the need for an evidentiary hearing. *Mach Mining, LLC*, 135 S. Ct. at 1656. As *Mach Mining* shows, the requisite information about the charge is limited to informing the University of the specific allegation. And the specific allegation is that Ms. Williams was subjected to gender discrimination because of, among other reasons, the deterrence and futility of applying for a job reserved instead for a man. The Commission was not obligated to disclose any further information or its sources to meet its limited conciliation obligation. *See also, e.g.*, *MVM, Inc.*, Civil Action No. TDC-17-2881, 2018 WL 1882715, at *4 (rejecting request for further detail on the basis that the Commission had identified to defendant "the conduct and the employees who suffered as a result, including specifically identifying the primary charging party . . . such that [defendant] had notice of the potential claims against it").

Accordingly, in an exercise of its discretion, the Court shall deny the requested stay because the Commission is not obligated to engage in any further conciliation.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the [10] Motion of Defendant The George

18

Washington University to Dismiss the Complaint or, Alternatively, Stay Proceedings.

An appropriate Order accompanies this Memorandum Opinion.

Dated: May 8, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge