**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-1978 (CKK/GMH) |
| v. | ) ) | |
| THE GEORGE WASHINGTON UNIVERSITY, | ) ) ) | |
| Defendant. | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The Equal Employment Opportunity Commission ("Plaintiff" or the "EEOC") filed this action on behalf of Sara Williams, née Mutalib, against The George Washington University ("Defendant" or the "University") pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* EEOC alleges that Ms. Williams, who was employed as Executive Assistant to the University's Director of Athletics, Patrick Nero, was treated less favorably—by being paid less for equal work and being denied employment opportunities and advancement—than a male comparator, Michael Aresco, who was hired as Special Assistant to Mr. Nero. The kernel of the present discovery dispute asks whether an attorney for the EEOC violated rule 26(b)(5)(B) of the Federal Rules of Civil Procedure, the protective order entered in this case (the "Protective Order"), or her ethical obligations when, after Defendant informed her that the EEOC was in possession of two email chains that allegedly reflected communications among University personnel seeking legal advice from the University's General Counsel's office, that EEOC attorney nevertheless reviewed those documents. While

there is a fairly straightforward answer to that question—yes, she, at least, violated Rule 26(b)(5)(B)—it has sprouted another dispute over whether the documents counsel reviewed were, indeed, privileged and whether the University has waived privilege.  This Memorandum Opinion and Order addresses all three issues.

For the reasons that follow, the University's motion, which is styled a "Motion for an Order Requiring the EEOC to Return or Destroy the University's Privileged Documents," is granted in part and denied in part.  Furthermore, the Court finds that many of the communications over which the University claims attorney-client privilege are protected and that the University has not waived privilege.[1]

## I.      BACKGROUND

The seeds of this dispute were sown months ago, when in November 2019, without authorization from the University, Ms. Williams provided the EEOC with certain work-related emails from her University email account that presumably supported the allegations in the Complaint.[2]  ECF No. 58-5 at 2.  In December 2019, as they were hashing out certain discovery disputes, the University asked the EEOC to confirm that it had produced all responsive, discoverable emails collected from Ms. Williams' University email account.  ECF No. 47-5 at 27–28; ECF No. 58-9 at 3, 7.  The EEOC resisted providing such confirmation.  *See id.*  That issue was eventually brought before Judge Kollar-Kotelly as one of a series of discovery disputes that

---

[1] The docket entries most relevant to this Memorandum Opinion and Order are (1) Minute Order dated March 13, 2020; (2) the University's "Motion for an Order Requiring the EEOC to Return or Destroy the University's Privileged Documents" and its exhibits (ECF No. 58); (3) the EEOC's opposition to that motion and its exhibits (ECF No. 61 (redacted opposition with non-confidential exhibits); ECF No. 64 (sealed, unredacted opposition with sealed exhibits)); (4) the University's reply and its exhibits (ECF No. 65).

[2] Ms. Williams continued to have access to her University email account during this litigation because she was still employed by the University, although no longer in the Athletics Department.  ECF No. 47-4 at 2.  As of July 2020, the University no longer employs her.  Joint Statement Regarding Discovery Disputes dated Oct. 21, 2020 (on file with the Chambers of the undersigned).

was then referred to the undersigned.  ECF No. 38 at 27–36 (Transcript of February 19, 2020 Hearing before Judge Kollar-Kotelly); ECF No. 39 (Referral Order dated February 25, 2020); Transcript of March 12, 2020 Hearing at 114–19 ("Mar. 12, 2020 Tr.") (on file with the Chambers of the undersigned).  The undersigned held a hearing on the disputes on March 12, 2020, and the next day issued a Minute Order requiring the EEOC to produce those emails (or supplement its discovery responses to state its basis for withholding any such emails) by March 20, 2020 (the "March 13 Minute Order").  Minute Order dated March 13, 2020.

On March 20, 2020, the EEOC made its supplemental production of documents and "certifie[d] that it ha[d] produced all non-privileged, responsive documents in its possession, custody, or control."  ECF No. 61-19 at 2.  To allow Defendant time to designate any of the emails "as subject to the Protective Order" entered in this case near the beginning of discovery, the EEOC stated it would "treat the entirety of [the supplemental] production of emails from Ms. Williams' [University] account as though it were subject to the Protective Order for the next 30 days."  *Id.* That protective order outlines procedures to follow when a party seeks to mark appropriate materials as "confidential," as well as when a party who has produced documents discovers "that certain inadvertently produced material is subject to a claim of privilege or other protection."  ECF No. 33 at 7, 14.

On May 22, 2020, the University sent counsel for the EEOC a letter stating that two email chains that the EEOC had produced as part of its March 20, 2020 production contained material protected by attorney-client privilege.  ECF No. 58-2 at 3.  It requested that the EEOC (1) "explain in writing its willful and prolonged failure to bring [those] documents to the University's attention," (2) "identify all persons who reviewed the documents and any others with the same or similar content," (3) "clarify how long it has been in possession of [those] documents," and (4)

"immediately sequester and destroy all copies of [those] documents . . . , as well as all notes concerning [the] documents, and confirm in writing that this has been done." *Id.* at 3–4. After the EEOC received that letter, counsel for the agency "reviewed the headers and glanced at or skimmed portions" of the identified emails and "determined that they are not privileged."[3] ECF No. 61-30, ¶ 4; ECF No. 58-7 at 2; ECF No. 57 at 12. After briefly reviewing the emails, counsel for the EEOC marked them with a note reading, "Do not look at." ECF No. 57 at 14. The agency had not previously reviewed the emails. ECF No. 58-5 at 2.

The EEOC did not provide a substantive response in writing to the University's May 22, 2020 letter, or to its follow-up emails. ECF Nos. 58-3, 58-4; ECF No. 57 at 21. The record reflects that the parties had a phone conference on July 14, 2020, but were unable to resolve the matter. ECF No. 58-4 at 2; ECF No. 58-5 at 2. Consequently, they brought it before Judge Kollar-Kotelly on July 21, 2020. ECF Nos. 58-6, 58-7. The University characterized the dispute as involving "the EEOC's refusal to sequester or destroy the University's privileged documents" that were produced as required by the March 13 Minute Order; the EEOC asserted that the issue "concerns whether two emails EEOC produced on March 20, 2020," pursuant to that Order "contain any of Defendant's privileged information, and, if so, what, if any, redactions need to be made," further arguing that, even if the documents are attorney-client communications subject to privilege, "Defendant long ago waived privilege."[4] ECF No. 58-6 at 2; ECF No. 58-7 at 2. The next day,

---

[3] The EEOC also asserts that those emails had been subject to "a limited responsiveness review" between March 13, 2020, the date the undersigned ordered the EEOC to produce responsive emails collected from Ms. Williams' University email account, and March 20, 2020, the date those emails were produced to the University. ECF No. 64 at 38; ECF No. 57 at 10–11.

[4] Although the parties and most of the cases speak of "waiver" of privilege, a more accurate term is "forfeiture." *See, e.g.*, *Trs. of the Elec. Workers Local No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc..* 266 F.R.D. 1, 11 n.10 (D.D.C. 2010). Nevertheless, the Court will follow the parties' practice and use the term "waiver."

Judge Kollar-Kotelly referred the dispute to the undersigned in light of the fact that the "dispute arises from documents produced pursuant to" the March 13 Minute Order.[5]  ECF No. 55 at 1.

In an order dated July 23, 2020, the undersigned noted that "[b]oth parties agree[d]" that it was appropriate to submit the two relevant documents for *in camera* review and directed the University to lodge them with Chambers.  Minute Order dated July 23, 2020.  The undersigned held a hearing on the dispute on July 28, 2020, and thereafter ordered the parties to submit further briefing (ECF Nos. 56–57), which was completed on September 14, 2020.  The University argues that Melanie M. Peterson, Senior Trial Attorney with the EEOC and an attorney of record in this case, violated Rule 26(b)(5)(B), the Protective Order, and the D.C. Rules of Professional Conduct by reviewing the emails after having been put on notice that the University considered them privileged.  ECF No. 58 at 15–21.  It further contends that the two email chains at issue—one of which spans July 15, 2016, to July 18, 2016 (identified by Bates numbers EEOC0001110–EEOC001112) (the "July 2016 Email Chain"), and one of which spans July 19, 2016, to September 26, 2016 (identified by Bates numbers EEOC0001075–EEOC0001086) (the "July–September 2016 Email Chain")—are protected in part by attorney-client privilege, asserting that they "contain confidential communications between [Ms. Williams] and University Associate General Counsel Stephanie Baldwin" that "were made for the purpose of securing legal advice."  ECF No. 58 at 12–15.  Finally, it asserts that it did not waive privilege over these documents pursuant to Rule 502(b) of the Federal Rules of Evidence or by selectively disclosing or putting privileged materials

---

[5] The referral clearly covers only the disputes raised by the parties that relate to the two email chains that were produced pursuant to the undersigned's March 13 Minute Order.  The EEOC attempts to inject an unrelated issue into this morass, asking the Court to opine as to whether attorney-client privilege attaches to two documents that Ms. Williams provided to the EEOC during the administrative investigation of her claims and that were "produced to Defendant as part of the Investigative File on October 21, 2019."  ECF No. 64 at 9, 23; ECF No. 64-2 at 2–3 (EEOC000796–EEOC000797).  The University objected to the EEOC raising that issue here (ECF No. 62, ¶8) and does not respond to the EEOC's substantive argument in its papers.  The undersigned finds that the question of whether the documents identified as EEOC000796–EEOC000797 are privileged is not properly before the Court and therefore does not address it in this Memorandum Opinion and Order.

at issue in this case.  *Id.* at 22–26; ECF No. 65 at 8–15.  The University seeks an order compelling the EEOC to immediately destroy or return the July 2016 Email Chain and the July–September 2016 Email Chain, prohibiting the EEOC from using those documents in this case, requiring the EEOC to submit a sworn statement providing details of its review of those documents, and imposing sanctions on the EEOC, including payment of the attorney's fees and costs the University has incurred in connection with this dispute.  ECF No. 58 at 26–27.

The EEOC counters that the University has not submitted sufficient proof to establish that the two email chains are protected attorney-client communications.  ECF No. 64 at 29–33.  It next argues that the University waived any potential privilege by asserting a defense that argues the jobs of Ms. Williams and Mr. Aresco were not substantially similar in part because only Mr. Aresco performed substantive work on legal issues, which places the allegedly privileged material at issue; by selectively disclosing privileged materials in relying on other communications between Ms. Williams or Mr. Aresco and the University's Office of General Counsel; and by failing to take reasonable steps to protect its privilege.  *Id.* at 33–38.  The EEOC further contends that it did not violate any ethical rules by reviewing the relevant email chains after the University asserted they were privileged because their privileged nature was not readily apparent and the EEOC had a reasonable basis for concluding that the University had waived privilege; it did not violate the Federal Rules of Civil Procedure because Rule 26(b)(5) allowed it to review and then sequester the documents at issue; and it did not violate the Protective Order because that document by its terms does not cover this situation and because it incorporates the standards of Rule 26(b)(5)(B), with which the EEOC allegedly complied.  *Id.* at 38–49.  It ends by arguing that, even if there was a violation of some sort, sanctions are not warranted.  *Id.* at 49–52.

## II.     DISCUSSION

### A.     Rule 26(b)(5)(B)

Rule 26(b)(5)(B) states:

> If information produced in discovery is subject to a claim of privilege or of
> protection as trial-preparation material, the party making the claim may notify any
> party that received the information of the claim and the basis for it.  After being
> notified, a party must promptly return, sequester, or destroy the specified
> information and any copies it has; must not use or disclose the information until the
> claim is resolved; must take reasonable steps to retrieve the information if the party
> disclosed it before being notified; and may promptly present the information to the
> court under seal for a determination of the claim.  The producing party must
> preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B).  The EEOC's "threshold" argument (ECF No. 64 at 43 n.17)—

although squirreled away in a footnote, which is no place to raise a substantive point, as courts in

this Circuit have frequently warned, *see, e.g.*, *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 36

(D.D.C. 2018) ("[H]iding an argument [in a footnote] and then articulating it in only a conclusory

fashion results in forfeiture." (second alteration in original) (quoting *CTS Corp. v. EPA*, 759 F.3d

52, 64 (D.C. Cir. 2014))—deserves some brief attention.  The EEOC states that "it is unclear

whether" Rule 26(b)(5)(B) applies to the disclosure at issue here because the documents did not

come into its possession through the University's inadvertent production in response to a request

for documents.  ECF No. 64 at 43 n.17.  As support, it cites, without further explanation,

*Eaglesmith v. Ray*, No. 2:11-cv-0098, 2012 WL 1554922 (E.D. Cal. May 1, 2012).  In that case,

during a deposition of one of the defendants' witnesses, the plaintiffs presented four documents

belonging to the defendants that contained allegedly confidential information.  *Id.* at *1.  On the

defendants' motion for a protective order, the court found that Rule 26(b)(5) did not apply because

the documents had not been exchanged as part of the normal discovery process—rather, the

defendants had become aware that the plaintiffs had possession of the documents only because

they were included as exhibits at the deposition.[6]  *Id.* at *2–3.  That is not the case here.  To be sure, the circumstances of the production here are unusual:  the EEOC accessed these documents when Ms. Williams provided them (conduct to which the University has objected) rather than by the University disclosing them to the EEOC.  However, the documents were exchanged as part of the discovery process when, pursuant to the March 13 Order, the EEOC produced the University's own documents back to it.  That fact brings them comfortably within the purview of the Federal Rules of Civil Procedure governing discovery.  *See, e.g.*, *Talismanic Props., LLC v. Tipp City*, 309 F. Supp. 3d 488, 496 (S.D. Ohio 2017) (finding that Rule 26(b)(5)(B) applied where the plaintiff originally gained access to a privileged document of the defendant through a public records request, but the plaintiff thereafter produced that same record to the defendant in response to the defendant's discovery requests).  Moreover, the plain language of the rule allows "*any* party" to make a claim of privilege, which in turn requires "*any* party that received the information" to "promptly return, sequester, or destroy" that information.  Fed. R. Civ. P. 26(b)(5)(B) (emphasis added).  Here, the University—a party to this litigation—made a claim of privilege to the EEOC— a party who received the information and then produced it in discovery.  The text of the rule therefore covers this situation.

The University argues that the plain text of Rule 26(b)(5)(B) establishes that the EEOC's counsel violated the rule when she reviewed the July 2016 Email Chain and the July–September 2016 Email Chain after she had been informed that the University claimed those documents

---

[6] In the end, the court in *Eaglesmith* relied on its inherent power to order the plaintiffs to return the documents to the defendants and the defendants to thereafter produce redacted versions to the plaintiffs.  *See id.* at *3.  Other courts have similarly relied on their "inherent authority to control and preserve the integrity of [ ] judicial proceedings" to "remedy any unfair advantage" gained by a party that obtains documents outside of the discovery process.  *In re Shell Oil Refinery*, 143 F.R.D. 105, 108–09 (E.D. La. 1992).  Thus, even if Rule 26(b)(5)(B) did not apply by its terms to the situation here, the Court could nevertheless remedy the issues raised by the University's motion pursuant to its inherent power.  *See, e.g.*, *Reinsdorf v. Skechers U.S.A.*, No. CV 10-7181, 2013 WL 12116415, at *4 (C.D. Cal. May 31, 2013) (looking to Rule 26(b)(5)(B) for guidance in resolving dispute regarding a claim of privilege over material not exchanged in formal discovery).

contained privileged information.  The University points out that the rule requires a party put on notice that it is in possession of another party's allegedly privileged materials to "promptly return, sequester, or destroy" the information and nowhere mentions that review is permitted.  ECF No. 58 at 17; ECF No. 65 at 6.  The EEOC has its own textual argument, derived from the canons of statutory interpretation known as *noscitur a sociis*, which holds that "a word is known by the company it keeps," *Yates v. United States*, 574 U.S. 528, 543 (2015), and the rule against surplusage, which "dictates that when construing a statute courts 'give effect, if possible, to every clause and word,'" *Great Lakes Comnet, Inc. v. FCC*, 823 F.3d 998, 1003 (D.C. Cir. 2016) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  According to Plaintiff, the term "sequester"— which it claims it accomplished when, after its counsel scanned the documents, she pasted a note on them stating, "Do not look at"—when interpreted along with the terms "return" and "destroy"— which are the other two options in Rule 26(b)(5)(B) for a party who has learned it is in possession of another party's allegedly privileged documents—"do[es] not require that the documents are never reviewed; those terms merely dictate who has possession or control of the documents."  ECF No. 64 at 44.  That is the agency's *noscitur a sociis* argument.  Deploying the rule against surplusage, the EEOC contends that the clause requiring the party in possession of the assertedly privileged documents to "return, sequester, or destroy" the documents must be given a meaning independent of the clause that prohibits the party in possession of those document from "us[ing] or disclos[ing] the information until the claim is resolved."  *Id.* at 43–44.  The agency indicates that interpreting Rule 26(b)(5)(B) to allow it to review the relevant documents even after being informed of the claim of privilege avoids the bane of surplusage, although it fails to spell out that argument with any clarity.  *See id.* ("[G]eneral principles of statutory interpretation provide . . . that each of the words in the clause—'return, destroy, or sequester' [*sic*]—are given

an independent and complementary meaning[ ] and that the clause is not duplicative of the clause prohibiting 'use.'").

But the canons the EEOC cites better support the opposite of its position.  As to *noscitur a sociis*, a party who, when informed of a claim of privilege, "promptly return[ed] . . . or destroy[ed] the specified information and any copies" it had would necessarily no longer be able to review that information.  It follows, then, that sequestration should similarly ban further review.  That also follows from the rule against surplusage, which asks that (1) the clause requiring the prompt return, sequestration, or destruction of the allegedly privileged information and (2) the clause prohibiting the party in possession of the material from "us[ing] or disclos[ing] the information until the claim is resolved" be given "independent meaning[s] to avoid redundancy or surplusage," *Ass'n for Cmty. Affiliated Plans v. Dept. of Treasury*, 392 F. Supp. 3d 22, 42 (D.D.C. 2019).  If, as the EEOC argues, the sole purpose of Rule 26(b)(5)(B) is to prevent the party in possession of the potentially privileged material from "providing the [ ] communications to third parties" (ECF No. 64 at 45), that goal is accomplished by the clause prohibiting the "use or disclos[ure]" of that information. That is, the clause requiring the party in possession to "promptly return, sequester, or destroy" does no independent work under the EEOC's interpretation.  If, however, the "return, sequester, or destroy" clause is read to prohibit the party in possession from further review of the material once a claim of privilege is made, there is no issue of surplusage or redundancy, because that clause then has a meaning independent from the prohibition on use or disclosure.

Indeed, the EEOC's overarching argument that, even after the University made its claim of privilege over the July 2016 Email Chain and the July–September 2016 Email Chain, the agency was entitled to review them to determine if they were, indeed, privileged (ECF No. 64 at 38–47), is further undermined by the structure of Rule 26(b)(5)(B).  As noted, the rule states that after a

10

party in possession of a document has been notified that the opposing party has made a claim of privilege over that document, the party in possession must "promptly return, sequester, or destroy the specified information," must refrain from using or disclosing it, and may "promptly present the information to the court under seal for a determination of the claim [of privilege]."  Fed. R. Civ. P. 26(b)(5)(B).  Thus, the rule itself provides that the claim of privilege, if disputed, will be resolved by the court; it does not contemplate that the party in possession of the allegedly privileged material will or should make that determination on its own.  *See, e.g.*, *Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc.*, 335 F.R.D. 371, 377 (E.D. Mich. 2020) (holding that, once a disputed claim of privilege is made pursuant to Rule 26(b)(5)(B), the question of the applicability of the privilege, including whether privilege has been waived, "is for the Court's determination"); *Woodard v. Victory Recs., Inc.*, No. 11-CV-7594, 2013 WL 4501455, at *3 (N.D. Ill. Aug. 23, 2011) ("The rule does not provide for the non-asserting party to make the determination [of privilege] on its own.  If it disputes the assertion of the privilege . . . , it can invoke the decision making authority of the court, but cannot divine justice on its own." (quoting *Piasa Com. Interiors, Inc. v. J.P. Murray Co.*, No. 07-CV-617, 2010 WL 1241563, at *2 (S.D. Ill. Mar. 23, 2010))); *Regions Bank v. Chi. Title Ins. Co.*, No. 10-CV-80043, 2011 WL 13225147, at *6 (S.D. Fla. Nov. 7, 2011) (holding that once Rule 26(b)(5)(B) is invoked, the resolution of the claim of privilege is in the hands of the court, "regardless of [the party in possession's] . . . belief that the documents were not privileged, and regardless of whether the documents were in fact privileged"); *Coleman v. Sterling*, No. 09-CV-1594, 2011 WL 13177041, at *3 (S.D. Cal. Nov. 4, 2011) (finding that "a party who intends to challenge a claim" of privilege pursuant to Rule 26(b)(5)(B) must "promptly present it to the court" in order "to allow parties to know whether a challenge is being made to a claim and have a determination of the claim so that they know whether

the information may be used to litigate the case.").  That is, when a party makes a claim of privilege

pursuant to Rule 26(b)(5)(B), the opposing party has two choices:  it may accept the claim or it

may challenge the claim by providing the material under seal to the Court for determination of the

issue of privilege; it may not, however, review the material to determine for itself whether the

claimed privilege applies.  *See In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626,

2016 WL 7115998, at *4 (M.D. Fla. Oct. 24, 2016) (indicating that Rule 26(b)(5)(B) does not

"provide[ ] that the receiving party is able to *review* the inadvertently-produced material for the

purpose of determining *whether to move the Court* to compel it," but, rather, means that "a review

of the documents is not permitted" (emphasis added)); *cf. Greater New York Taxi Ass'n v. City of

New York*, No. 13-CV-3089, 2018 WL 2316629, at *5–6 (S.D.N.Y. May 8, 2018) (interpreting a

protective order closely tracking the provisions of Rule 26(b)(5)(B) to require a party, "[u]pon

being notified that [certain] documents were privileged," to "immediately cease[d] [ ] review of

the clawed back documents" and noting an "attorney's ethical responsibilities to refrain from

examining or disclosing materials that the attorney knows or reasonably should know to be

privileged"); *N'Jai v. Bentz*, No. 13-cv-1212, 2016 WL 1535074, at *2 (W.D. Pa. Apr. 15, 2016)

(finding that a law firm that "immediately shredded and digitally erased all copies" of documents

over which the opposing party claimed privilege "prior to anyone viewing them" acted in

compliance with Rule 26(b)(5)(B)).

Although exacting, a rule prohibiting review of putatively privileged material makes sense.

The attorney-client privilege is "rooted in the imperative need for confidence and trust," *Jaffee v.

Redmond*, 518 U.S. 1, 10 (1996) (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)), in

order to "encourage 'full and frank communication between attorneys and their clients and thereby

promote broader public interests in the observance of law and the administration of justice,'"

*Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  As the undersigned noted in connection with a prior discovery dispute in this case, it is a "'common sense observation' that '[i]f an adverse party is provide[d] access to privileged material'"—as would often be the case under the EEOC's reading of Rule 26(b)(5)(B)—"'then a pertinent aspect of confidentiality will be lost.'"[7]  *EEOC v. George Washington Univ.*, No. 17-cv-1978, 2020 WL 3489478 at *11 (D.D.C. June 26, 2020) (some internal quotation marks omitted) (first alteration in original) (quoting *In re Dow Corning Corp.*, 261 F.3d 280, 284 (2d Cir. 2001)).  Prohibiting further review of material over which a claim of privilege has been made so that a court may determine the issue serves the goal of safeguarding attorney-client confidentiality.

---

[7] The EEOC cites two cases in particular to support its argument that it was justified in reviewing the documents at issue even after it was informed of the claim of privilege.  Both are easily distinguishable.  *Irth Solutions, LLC v. Windstream Commc'ns LLC*, concerned allegedly privileged documents that the defendant had produced to the plaintiff not once, but twice, and that the defendant attempted to claw back after the plaintiff had "thoroughly reviewed" them.  No. 2:16-cv-219, 2017 WL 3276021, at *2–5 (S.D. Ohio Aug. 2, 2017).  The primary issue before that court was whether those productions waived privilege over the documents.  *Id.* at *5–15.  In addressing the defendant's argument that, notwithstanding any waiver, the plaintiff had violated Rule 26(b)(5)(B), the court held that, in light of ambiguous wording in the clawback agreement between the parties, the plaintiff complied with the rule by sequestering the allegedly privileged material and marking it "attorney eyes only."  *Id.* at *15.  Thus, *Irth Solutions* did not address a situation, like that at issue here, in which counsel reviewed material for the first time after having been put on notice that it was potentially privileged.  Moreover, the undersigned disagrees with any suggestion that limiting review of material over which privilege has been claimed to attorneys alone satisfies Rule 26(b)(5)(B).

*Williams v. District of Columbia* also concerned whether the defendant had waived privilege over documents that it had produced to the opposing party.  806 F. Supp. 2d 44, 46–48 (D.D.C. 2011).  Judge Kollar-Kotelly was unimpressed by the defendant's "efforts to detract from its failure to demonstrate" that it had not waived privilege by accusing the plaintiff of violating Rule 26(b)(5)(B).  *Id.* at 52 n.9.  Addressing that argument "[p]arenthetically," the court stated only that the plaintiff had not disseminated or used the allegedly privileged material "since being notified of the [defendant's] error."  *Id.*  It did not, that is, state or otherwise indicate that an attorney is at liberty to review information after it has been put on notice that the opposing party has made a claim of privilege.

It is worth noting, too, that like the defendant in *Williams*, the EEOC has attempted to "detract from its failures"—here, the failure to comply with Rule 26(b)(5)(B)—by contending that the University "read an email that [Ms. Williams] sent to EEOC counsel after [the] EEOC asserted privilege.  ECF No. 64 at 9–10.  Like Judge Kollar-Kotelly in *Williams*, the undersigned is unimpressed.  Not only has the University adequately rebutted that charge (ECF No. 65 at 22–25), but also any dispute as to the propriety of the University's conduct in that regard is not properly before the Court and will therefore not be further addressed.

Protecting client confidences is also a basic tenet of the ethical rules governing attorney conduct in this district. *See* D.C. Rules of Pro. Conduct 1.6.[8] Guidance from the Legal Ethics Committee of the D.C. Bar interpreting the District of Columbia Rules of Professional Conduct support the interpretation that an attorney who has been informed that she possesses material over which a claim of privilege has been made must not review that material. Ethics Opinion 256 addresses, among other things, the situation in which an attorney receives material and is put on notice before it has been reviewed that the disclosure of the material was inadvertent because, for example, it was subject to a claim of privilege. D.C. Bar Ethics Opinion No. 256 (May 1995) ("Ethics Opinion 256"). The Legal Ethics Committee held that, under those circumstances, the receiving attorney "should, at a minimum, seek guidance from the sending lawyer and, if that lawyer confirms the inadvertence of the disclosure and requests return of the material, unread, the receiving lawyer should do so." *Id.* In other words, when an attorney has been put on notice that she has received material to which she is not entitled, her review of that material "would be unethical."[9] *Id.*; *see also* D.C. Bar Ethics Opinion No. 318 (Dec. 2002) ("Ethics Opinion 318")

---

[8] "[T]his Court has adopted the District of Columbia Rules of Professional Conduct to govern the practice of law in this district." *Brooks v. Berryhill*, No.1:15-cv-00436 (CKK/GMH), 2017 WL 10716887, at *4 (D.D.C. Oct. 26, 2017) (citing *Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 20 (D.D.C. 2008), and Local Civil Rule 83.15), *report and recommendation adopted*, 2019 WL 120767 (D.D.C. Jan 7, 2019). The Advisory Committee's note to Rule 26(b)(5)(B) make clear that the Rule 26(b)(5)(B) incorporates "the applicable law of . . . professional responsibility." Fed. R. Civ. P. 26(b)(5)(B) advisory committee note to 2006 amendments; *see, e.g.*, *In re Keurig Green Mountain Single Serve Coffee Antitrust Litig.*, No. 14 MD 2542, 2019 WL 2003959, at *3 (S.D.N.Y. May 7, 2019) (looking to rules of professional responsibility to interpret responsibilities under Rule 26(b)(5)(B)); *United States v. Basic Rsch., LLC*, No. 2:09-cv-972, 2010 WL 11693231, at *3 (D. Utah Mar. 18, 2010) (looking to ethics opinions to interpret responsibilities under Rule 26(b)(5)(B)). Ethics opinions, while not binding on a court, are "worthy of consideration and [ ] entitled to such weight, if any, [a court] desire[s] to accord [them]." *United States v. Nicholson*, 475 F.3d 241, 250 n.10 (4th Cir. 2007).

[9] The EEOC argues that Ethics Opinion 256 allowed it to review the materials at issue because it, like Rule 26(b)(5)(B), "incorporates substantive privilege law, including waiver." ECF No. 61 at 41. To be sure, the opinion states, "Thus, where (as in this jurisdiction) the underlying law holds that inadvertently disclosed information is no longer protected, there would appear to be no justification for requiring the receiving lawyer to accord it special treatment." Ethics Opinion 256. However, that statement comes during the opinion's discussion of an attorney's responsibilities when there is no indication of confidentiality on inadvertently-disclosed documents, not when the attorney has been notified that she is in possession of material for which a claim of privilege has been made. Moreover, the rule that it cites— that mere inadvertent disclosure waives privilege—no longer governs in federal courts since the advent of Rule 502(b)

("Under [Ethics Opinion 256] . . . , [ ] receiving lawyers must return privileged documents without reviewing them if they learn about their privileged nature before reviewing the documents."). Specifically, the opinion held that such conduct violates Rule 8.4 of the Rules of Professional Conduct, which states that it is professional misconduct to "[e]ngage in conduct involving dishonesty"; and Rule 1.15, which requires an attorney who receives property belonging to a third party to notify the third party and deliver the property to it upon request.  Ethics Opinion 256.

The EEOC objects that Ethics Opinion 256 "is inapposite because it deals with inadvertent disclosures, not with disclosures from clients."  ECF No. 64 at 41.  The EEOC provides no clues as to how it interprets "inadvertence," but it is clear from Ethics Opinion 256 (as well as from cases discussing the concept in the context of discovery) that "inadvertence" is to be determined from the point of view of the party whose privileged or otherwise protected material has been disclosed.  *See* Ethics Opinion 256 ("Where a lawyer has inadvertently included documents containing client secrets or confidences in material delivered to an adversary lawyer, and the receiving lawyer in good faith reviews the documents before the inadvertence of the disclosure is brought to that lawyer's attention, the receiving lawyer engages in no ethical violation by retaining and using those documents.  Where, on the other hand, the receiving lawyer knows of the inadvertence of the disclosure before the documents are examined, Rule 1.15(a) requires the receiving lawyer to return the documents to the sending lawyer; the receiving lawyer also violates Rule 8.4(c) if the lawyer reads and/or uses the material.");  *see also In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) (discussing "inadvertent or involuntary disclosures" of

---

of the Federal Rules of Evidence.  *See, e.g.*, *George Washington Univ.*, 2020 WL 3489478, at *8.  Finally, the EEOC's argument ignores the principle that, once a litigant makes a claim of privilege pursuant to Rule 26(b)(5)(B), as here, the determination of that dispute—including whether the privilege was waived—is for the court.  *See Radiance Aluminum Fence*, 335 F.R.D. at 377.

information during discovery); *Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 53–54 (D.D.C. 2009) (discussing "inadvertence" from the perspective of the party whose privileged material has been disseminated). This focus on "inadvertence" grows from prior precedent in this Circuit and others that a court "will grant no greater protection to those who assert the privilege than their own precautions warrant," such that production of privileged material to an opposing party waived the protection "even if the disclosure [was] inadvertent." *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) (quoting *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984)). Rule 502 of the Federal Rules of Evidence abrogated that "strict construction of waiver" to allow the privilege to be preserved as long as its holder did not intentionally disclose privileged material and took steps to protect the privilege. *George Washington Univ.*, 2020 WL 3489478, at *8 (quoting *Amobi*, 262 F.R.D. at 52). Thus, an opposing party gains access to privileged material "inadvertently" if the holder of the privilege did not intend for that material to be disclosed. *See, e.g.*, *Amobi*, 262 F.R.D. at 53 (defining "inadvertent" disclosure as "unintended" or "mistaken" disclosure); *see also In re Tier 1 JEG Telecommc'ns Cases*, No. 4:07-CV-00043, 2013 WL 12158598, at *7 (S.D. Iowa Nov. 25, 2013) ("In ordinary usage something is 'inadvertent' if it is not intended or planned."); *First Tech. Cap., Inc. v. JPMorgan Chase Bank*, No. 5:12-CV-289, 2013 WL 7800409, at *2 ("[A]ny mistaken, or unintentional, production of privileged material is 'inadvertent.'"); *Coburn Grp., LLC v. Whitecap Advisors LLC*, 640 F. Supp. 2d 1032, 1038 (N.D. Ill. 2009) (stating that to determine whether production of privileged material was "inadvertent," a court should ask "whether the party intended [the] privileged . . . document to be produced"). Here, even the EEOC stops short of suggesting that the University intentionally provided the agency access to the materials at issue and the Court would reject any such suggestion out of hand. It is clear that the EEOC gained such access without any action at all on the University's part when

in November 2019, Ms. Williams provided a sampling of emails from her University account to the agency.  *See, e.g.*, ECF No. 38 at 27–33; Mar. 12, 2020 Tr. at 114–119.  Indeed, the University has repeatedly asserted that the EEOC should not have had possession of the documents that it collected from Ms. Williams' University email account at all.  *See, e.g.*, ECF No. 58-2 at 3; ECF No. 58-9 at 3; Mar. 12, 2020 Tr. at 117.  Admittedly, the EEOC received the material at issue in an unconventional way, not through mistaken production by Defendant, but rather through (apparently unauthorized) disclosure by Ms. Williams.  Nonetheless, the EEOC's access to the material at issue qualifies as inadvertent as contemplated by Ethics Opinion 256, as it was neither intended nor sanctioned by the University.

The EEOC further argues that a different ethics opinion is more germane to this dispute. In 2002, building on Ethics Opinion 256, the Legal Ethics Committee in Ethics Opinion 318 addressed the situation in which "counsel in an adversary proceeding receives a privileged document from a client or other person that may have been stolen or taken without authorization from an opposing party."  Ethics Opinion 318.  According to the EEOC, Ethics Opinion 318 is applicable (and Ethics Opinion 256 is inapplicable) because "Ethics Opinion 256 . . . deals with inadvertent disclosures, not with disclosures from clients," as does Ethics Opinion 318.  ECF No. 61 at 41.  There are at least two problems with that assertion.  First, as discussed above, the receipt of these documents by the EEOC fits comfortably into a definition of "inadvertent" as "unintentional."

Second, the EEOC appears to fundamentally misinterpret the teaching of Ethics Opinion 318.  The opinion holds that, when an attorney receives materials of unknown provenance that might be privileged, review of those materials violates her ethical responsibilities if (1) the materials are "privileged on their face" and (2) the attorney has "a reasonable basis to conclude"

both that (a) "the privilege has not been waived," and (b) the materials "have been obtained without authorization." *Id.* Conversely, "[a] receiving lawyer would not violate" the ethical rules "by reviewing and using the document whose source is unknown if: 1) its privileged status is not readily apparent on its face; and 2) receiving counsel did not know that the document came from someone who was unauthorized to disclose it." *Id.* The opinion further explains that "[i]f the privileged status of the document does not become apparent to receiving counsel until after the document has been reviewed, . . . it is too late for receiving counsel to take corrective action because the information cannot be purged from his mind." *Id.* Thus, Ethics Opinion 318 takes as a given that the receiving attorney has not been put on notice that she has received an opposing party's privileged material. Indeed, Ethics Opinion 318 expressly reaffirms that an attorney who reviews material known to be privileged may be "engaging in a dishonest act" in violation of the Rules of Professional Conduct and that "lawyers must return privileged documents without reviewing them if they learn about their privileged nature before reviewing the documents." *Id.* That is the situation here. As discussed above, having been informed of the University's claim of privilege, the EEOC had the options of accepting the University's representation or bringing the dispute to the Court for determination without reviewing the material. It did neither. The path it chose— reviewing the emails at issue after the University informed the agency that it claimed privilege over those communications— violated Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure.[10]

---

[10] The University also contends that the EEOC should be sanctioned for violation of the Protective Order. Section 10 of the Protective Order covers the inadvertent production of privileged or otherwise protected material. ECF No. 33, § 10. It begins by stating that "[w]hen a Producing Party"—defined, as one might expect, as a party or non-party that produces material in disclosures or responses to discovery requests—"gives notice to Receiving Parties"—that is, any parties who receive the disclosure or discovery materials produced—"that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B)." *Id.*, ¶¶ 2.13, 2.16, 10.1. The careful reader will have spied the pitfall for the University's argument: the Protective Order appears to envision a situation in which the Producing Party has disclosed its own potentially privileged material to the Receiving Party. Here, however, the Producing Party (the EEOC)

### B.        Attorney-Client Privilege

As shown above, under Rule 26(b)(5)(B), the EEOC was prohibited from reviewing the documents at issue once the University made its claim of privilege—whether or not those documents were, in fact, privileged.  *See, e.g.*, *Regions Bank*, 2011 WL 13225147, at *6 (holding that once Rule 26(b)(5)(B) is invoked, the resolution of the claim of privilege is in the hands of the court, "regardless of [the party in possession's] . . . belief that the documents were not privileged, and regardless of whether the documents were in fact privileged").  That issue is thus separate from the EEOC's remaining contentions that the July 2016 Email Chain and the July-September 2016 Email Chain were not covered by the attorney-client privilege in the first place or, if they were, the University waived that privilege.  The Court now answers those follow-up questions, which will determine if, notwithstanding its violation of the Federal Rules of Civil Procedure, the EEOC may further review and use the two email chains at issue and certain related material that the University has so far withheld.

"The attorney-client privilege protects confidential communications between clients and their attorneys made for the purpose of securing legal advice or services."  *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 16 (D.D.C. 2016), *aff'd*, 892 F.3d 1264 (D.C. Cir. 2018).  The D.C. Circuit has "rejected a strict 'but for' requirement under which a communication could not be privileged if there was any purpose behind it other than seeking or providing legal advice"; instead, a communication is entitled to attorney-client privilege if "'one of the significant

---

provided to the Receiving Party (the University) the Receiving Party's potentially privileged material.  Therefore, the EEOC argues that, by its terms, the Protective Order does not apply to the situation at hand.  ECF No. 61 at 47–48.  Even the University acknowledges that the EEOC is "technically correct" that the Protective Order "was not intended to cover the situation at issue here," although it nevertheless argues that the EEOC has violated its spirit.  ECF No. 65 at 19–20.  In light of that concession and the finding above that the EEOC has violated Rule 26(b)(5)(B), the Court need not, and does not, address whether the agency has violated the Protective Order and, if so, whether such a violation would merit sanctions.

purposes' of the communication was to obtain or give legal advice." *Id.* (quoting *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757–60 (D.C. Cir. 2014)). "[T]he [attorney-client] privilege covers not only communications between an attorney and high-level corporate officers, . . . but also between the attorney and any corporate employee acting at the direction of corporate superiors in order to secure legal advice for the corporation." *Boehringer Ingelheim*, 180 F. Supp. 3d at 16. Moreover, "communications among non-attorneys can be entitled to protection if they concern matters in which the parties intend to seek legal advice or reflect legal advice provided by an attorney." *George Washington Univ.*, 2020 WL 3489478, at *11.

The EEOC takes issue with the proof that the University has presented in its briefing before this Court, arguing that Defendant was required to—but did not—"submit a detailed privilege log, record testimony[,] or an affidavit under oath" in order to establish its claim of privilege. ECF No. 64 at 30. The agency is correct that, generally, "the party asserting the attorney-client privilege . . . must demonstrate 'the applicability of the privilege by way of affidavits or other competent evidence.'" *Alexander v. FBI*, 192 F.R.D. 42, 45 (D.D.C. 2000) (quoting *Alexander v. FBI,* 186 F.R.D. 102, 111 (D.D.C. 1998)). However, even in the absence of such evidence, the Court may review the material *in camera* to determine the question of privilege. *See, e.g.*, *Alexander*, 192 F.R.D. at 45–46 (noting that, after the court determined that the proponent of the privilege had failed to establish it by competent evidence, the court reviewed the documents at issue *in camera* to determine if they were privileged); *see also, e.g.*, *Schreiber v. Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217, 221 (D.C. Cir. 1993) (approving of *in camera* review where proponent of privilege had failed to establish privilege by affidavit); *Founding Church of Scientology of Washington, D.C., Inc. v. Dir., FBI*, 104 F.R.D. 459, 463 (D.D.C. 1985) (asserting that a judge "can capably evaluate the applicability of the privileges by the traditional approach to an *in camera* examination" and

that if "unresolved questions" remain, a judge  "has the power to require a further declaration or affidavit and more detailed elaboration of the grounds for the asserted privilege").

Here, the Court's *in camera* review establishes that the relevant standard is met for some, but not all, of the emails from the July 2016 Email Chain and July–September 2016 Email Chain over which the University claims privilege.  The bulk of the emails in both chains are communications among Associate General Counsel Baldwin and other University employees.  No non-University personnel are included in any of the communications.  The July 2016 Email Chain contains four emails.  The University claims privilege over three of them.  One of the emails is clearly privileged, as it reflects legal advice communicated from Associate General Counsel Baldwin to Ms. Williams, who had requested the legal advice on behalf of the University, and other University employees.  July 2016 Email Chain at EEOC0001111–EEOC0001112 (email date-time stamped "Mon Jul 18, 2016 at 11:16 AM").  It is, therefore, an email whose purpose was to provide legal advice to the individual charged with obtaining that advice.  *See Boehringer Ingelheim*, 180 F. Supp. 3d at 16.  The other two emails in this chain over which the University claims privilege are non-substantive emails attaching or requesting contracts, and, importantly, resemble emails that the University has produced as non-privileged.[11]  *Compare id.* at EEOC0001110–EEOC0001111 (emails—subject to the University's claim of privilege—date-time stamped "Fri, Jul 15, 2016 at 1:55 PM" attaching contracts for review and "Fri, Jul 15, 2016 at 4:04 PM," asking Ms. Williams to resend one of the contracts) *with* ECF No. 64-1 at 5 (email— produced by the University as non-privileged—date-time stamped "Monday, June 06, 2016 12:37

---

[11] The contracts themselves are not included within the July 2016 Email Chain.

PM" from Ms. Williams to "GW Contracts" attaching a contract for review).[12]   Thus, the July

2016 Email Chain contains one privileged communication.

The July–September 2016 Email Chain contains 27 emails, of which the University claims

privilege over ten.   Seven of those are privileged.   One of them—from July 18, 2016, at 11:16

a.m.—is a duplicate of the email from that date and time found to be protected above.   *Compare*

*id.* at EEOC0001075–EEOC0001076 (email date-time stamped "Monday, July 18, 2016 11:16

AM") *with* July 2016 Email Chain at EEOC0001111–EEOC0001112 (email date-time stamped

"Mon Jul 18, 2016 at 11:16 AM").   Another email is from Associate General Counsel Baldwin

and relates the substance of a privileged conversation between her and Ms. Williams, during which

Associate General Counsel Baldwin expressed her legal opinion.   *Id.* at EEOC0001077–

EEOC0001078 (email date-time stamped "Tue, Jul 26, 2016 at 1:27 PM").   Two emails between

Associate General Counsel Baldwin and Ms. Williams from the evening of August 31, 2016, are

privileged: one provides legal advice and asks Ms. Williams for further information in order to

provide legal advice; the response from Ms. Williams supplies the requested information.   *Id.* at

EEOC0001079–EEOC0001080 (emails date-time stamped "Wed, Aug 31, 2016 at 5:25 PM" and

"Wed, Aug 31, 2016 at 5:33 PM").   Similarly, the first email in a two-email exchange between

Associate General Counsel Baldwin and Ms. Williams from September 1, 2016, requests

additional information in order to provide legal advice and the second email supplies it.   *Id.* at

EEOC0001080–EEOC0001081 (emails date-time stamped "Thu, Sep 1, 2016 at 8:17 AM" and

"Thu, Sep 1, 2016 at 6:57 PM").   Last, a September 18, 2016 email from Ms. Williams to other

University personnel relates Associate General Counsel Baldwin's legal opinion on a contract.   *Id.*

---

[12] In a document produced by the University, Associate General Counsel Baldwin asks Mr. Aresco to send contracts to the GW Contracts email address for review by the Office of General Counsel.   ECF No. 64-1 at 27 (email date-time stamped Wed, Oct 19, 2016 at 1:04 PM).

at EEOC0001081 (email date-time stamped "Sun, Sep 18, 2016 at 8:22 PM").  Again, these emails were intended to provide legal advice and opinions to non-attorney University employees seeking that advice on behalf of their employer.  *See Boehringer Ingelheim*, 180 F. Supp. 3d at 16.

The remaining three emails over which the University claims privilege merely state that contracts are attached for review without revealing any legal advice.  The first—from July 15, 2016, at 1:55 p.m.—is a duplicate of the email from that date and time found not to be privileged above.  *Id.* at EEOC0001076–EEOC0001077 (email date-time stamped "Friday, July 15, 2016 1:55 PM").  The other two are similarly non-substantive emails that are, again, similar to emails merely stating that a contract is attached for review, which the University has produced as non-privileged.  *Id.* at EEOC0001077 (email date-time stamped Tue, Jul 26, 2016 at 11:24 AM), EEOC0001078–EEOC0001079 (email date-time stamped "Tue, Aug 30, 2016 at 1:10 PM").

In sum, the July 2016 Email Chain included one email and the July–September 2016 Email Chain includes seven emails over which the University properly asserted privilege.

## C.    Waiver of Privilege

The EEOC next argues that, even if some or all of the July 2016 Email Chain and the July–September 2016 Email Chain were once protected by the attorney-client privilege, the University has waived that privilege.  It relies on two theories of waiver, one derived from Rule 502 of the Federal Rules of Evidence, and the other derived from case law holding that a party may not withhold material on the basis of attorney-client privilege where it has relied on privileged material or otherwise put privileged communications at issue in the litigation.  Neither argument is successful.

23

1.      Rule 502

Rule 502(b) of the Federal Rules of Evidence provides:

When made in a federal proceeding or to a federal office or agency, the disclosure [of material protected by attorney-client privilege or work product immunity] does not operate as a waiver in a federal or state proceeding if:

(1)      the disclosure is inadvertent;

(2)      the holder of the privilege or protection took reasonable steps to prevent disclosure; and

(3)      the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).  The EEOC contends that the University neither took reasonable steps to prevent disclosure of its privileged information nor took reasonable steps to rectify the error.  ECF No. 64 at 35–38.  Both arguments fail.

Rule 502 was instituted to "respond[ ] to the widespread complaint that litigation costs necessary to protect against waiver of attorney-client privilege or work product ha[d] become prohibitive due to the concern that any disclosure (however innocent or minimal) [would] operate as a subject matter waiver of all protected communications or information." Fed. R. Evid. 502, advisory committee's note (revised Nov. 28, 2007).  It therefore codified a "middle ground" between a rule that would find waiver "only if the disclosing party acted carelessly in disclosing the communication or information and failed to request its return in a timely manner" and one that held that "any inadvertent disclosure of a communication or information protected under the attorney-client privilege or as work product constitute[d] a waiver without regard to the protections taken to avoid such a disclosure." *Id.*  Rule 502(b)'s compromise focuses on whether "the holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error." *Id.*  This situation fits uneasily within the confines of the rule because the University had

nothing to do with the initial production of the material at issue to the EEOC.  That fact, alone, weighs heavily against a finding of waiver.  *See, e.g.*, *Kyko Global Inc. v. Prithvi Info. Sols. Ltd.*, No. C13-1034, 2014 WL 2694236, at *4 (W.D. Wash. June 13, 2014) (noting "the general sense that parties should not be able to force waiver of attorney-client privilege through investigative activities outside the discovery process"); *Reinsdorf v. Skechers U.S.A., Inc.*, No. CV-10-7181, 2013 WL 12116415, at *4 (C.D. Cal. May 31, 2013) (noting that the plaintiff's counsel's receipt of the defendants' privileged material from a non-managerial employee of the defendant "cannot be construed as waiver of the privilege by [the] [d]efendants" because the "power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors" (quoting *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985))).

In any event, as discussed above, the disclosure at issue here meets the first prong of the rule by properly being characterized as, at most, "inadvertent."  *See, e.g.*, *Amobi*, 262 F.R.D. at 53 ("I will [ ] use the word 'inadvertent' from Rule 502 to mean an unintended disclosure.").  But the ill fit of Rule 502(b) to this situation becomes particularly evident in analysis of the rule's second prong.  Requiring a party to take "reasonable precautions against disclosure of privileged documents," *id.*, the second prong is concerned with the measures taken prior to disclosure.  *See, e.g.*, *Heriot v. Byrne*, 257 F.R.D. 645, 661 (N.D. Ill. 2009) ("[I]f the procedures in place *prior to* [disclosure of] the documents . . . were reasonable, then this requirement is satisfied.").  As a general matter, there is no question that the University had a robust process for privilege review, which, as described in the undersigned's prior opinion in this case, involved two levels of document-by-document privilege review.  *George Washington Univ.*, 2020 WL 3489478, at *3. Indeed, the EEOC objected to that process as *too* robust.  *See id.*  However, as noted, the documents

at issue were not disclosed to the EEOC through the University's document production—Ms. Williams provided them to the agency without the University's authorization.  It is unclear, then, how any precautions taken by the University, however robust, would have prevented that disclosure.

Undaunted, the EEOC asserts that the University had reviewed Ms. Williams' email account "at least by November 2019" and should have "logged purportedly privileged emails it found . . . , including the at-issue communications, and . . . given that information to [the] EEOC" in order to prevent the EEOC from accessing privileged communications in any emails it had received directly from Ms. Williams.  ECF No. 64 at 35.  The EEOC thus appears to contend that, in order not to waive privilege, at some point prior to November 2019 when Ms. Williams provided a subset of emails from her University account to the agency, the University was required to review the entirety of that email account and create a privilege log for the benefit of the EEOC, presumably merely because the EEOC had asked for those emails in a discovery request.  But that ignores the facts of this case.  As the parties and the Court are well aware, the University objected to the EEOC's Request for Production No. 11—which sought "all emails sent from or received by any email account maintained by [the University] for [Ms. Williams'] use" during the bulk of her tenure in the Athletics Department—as overbroad and unduly burdensome.  ECF No. 61-6 at 8. In the undersigned's prior opinion in this case, the Court agreed with the University and limited the request to require production of "non-privileged emails from Ms. Williams' email account that include Mr. Nero or Mr. Aresco as a sender or recipient."  *George Washington Univ.*, 2020 WL 3489478, at *18.  Because none of the communications in either the July 16, 2016 Email Chain or the July–September 2016 Email Chain includes Mr. Nero or Mr. Aresco as a sender or recipient, those email chains are not responsive to the pertinent request as limited.  Thus, there would have

been no reason for those documents to be prophylactically reviewed for privilege or included on a privilege log.  Indeed, as the D.C. Circuit has explained, where, as here, "a broad discovery request includes an allegedly privileged document[ ] and [ ] there is an objection to the scope of the request, the court should first decide whether the objection covers the document."  *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003).  Only if the Court overrules the objection must the objecting party list the document on a privilege log.  *See id.* ("In short, if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections." (quoting *United States v. Philip Morris*, 314 F.3d 612, 621 (D.C. Cir. 2003), *abrogated on other grounds by Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009).

Perhaps, though, the EEOC means that, when the University had notice that Ms. Williams had provided some subset of her work emails to the EEOC,[13] the University was at that point required to review the entirety of Ms. Williams' email account and produce a privilege log so that the EEOC would be forewarned of privileged communications that might be among those emails.  But at that point, the University was unaware of the contents of any of the emails that Ms. Williams had provided to the EEOC; indeed, the EEOC refused even to represent that it had possession of emails responsive to the University's discovery requests or to produce any such emails until ordered to do so by the Court on March 13, 2020.  *See, e.g.*, ECF No. 38 at 27–35; Mar. 12, 2020 Tr. at 114–119; March 13 Minute Order.  The EEOC nevertheless suggests that such review was necessary to avoid waiver because the University knew that "it was possible, if not likely, that purportedly privileged information existed in [Ms. Williams'] University email."  ECF No. 64 at

---

[13] The parties' introductory briefing in January 2020 on the prior discovery dispute that was, eventually, referred to the undersigned for resolution indicates that, by mid-November 2019, the University had some inkling that Ms. Williams had provided a subset of her work emails to the EEOC.  Email of Matthew Sappington dated Nov. 12, 2019, attached as Exh. D to EEOC's Jan. 29, 2020 Letter Brief (on file with Chambers).  It appears that the EEOC confirmed that Ms. Williams had provided it with access to some of her emails by the end of January 2020.  EEOC's Jan. 29, 2020 Letter Brief.

36.  The Court is unaware of any legal authority—nor has the EEOC provided any—supporting the proposition that the EEOC's receipt of the University's documents outside of the discovery process required the University to engage in a burdensome review of Ms. Williams' entire email account or risk waiving privilege.  Indeed, cases indicate the contrary.  *See, e.g.*, *Kyko Global*, 2014 WL 2694236, at *4 (noting "the general sense that parties should not be able to force waiver of attorney-client privilege through investigative activities outside the discovery process"); *Reinsdorf*, 2013 WL 12116415, at *4 (noting that the plaintiff's counsel's receipt of the defendants' privileged material from a non-managerial employee of the defendant "cannot be construed as a waiver of the privilege by [the] [d]efendants").  Moreover, it was not unreasonable for the University to trust that Ms. Williams would have avoided disclosing the privileged documents of her employer (or that the EEOC would warn against her doing so), not least because of the risk at which it would—and did—place counsel for the EEOC.  So, to the extent that Rule 502(b)(2) can be twisted to apply to the situation at hand, the University has satisfied its requirement to take reasonable precautions to prevent disclosure of privileged material.

The EEOC next asserts that the University "did not assert the privilege promptly" because, although the EEOC produced the documents at issue on March 20, 2020, the University did not alert the EEOC that it had discovered those documents until May 22, 2020—a lag of 63 days.  ECF No. 61 at 37; *see also* ECF No. 58-2 at 2.  This appears to be an argument geared to the third requirement of Rule 502(b), which asks whether the privilege-holder "promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."  This argument is no more successful than that addressed above.

First, and most fundamentally, the EEOC improperly measures the relevant time period. To determine whether a delay in asserting privilege is unreasonable, courts look to the period

between when the privilege-holder had *knowledge* of the disclosure (rather than when the disclosure was made) and when the privilege-holder acted to address that disclosure.  *See, e.g.*, *Coburn Grp., LLC*, 640 F. Supp. 2d at 1041 (N.D. Ill. 2009) ("The [Advisory] Committee's comment that Rule 502 does not require a post-production review supports th[e] view that the relevant time under subpart (b)(3) is how long it took the producing party to act after it learned that the privileged or protected document had been produced."); *accord  Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CV, 2015 WL 1565310, at *9 (S.D. Fla. Apr. 8, 2015); *see also Heriot*, 257 F.R.D. at 662.  Here, there is no suggestion that the University sat for any length of time on its knowledge that the July 2016 Email Chain and the July–September 2016 Email Chain had been disclosed to the EEOC.  Rather, the University has represented, both in open court and in its briefing, that it requested the sequestration and destruction of those documents "promptly upon discovering" their disclosure.[14]  ECF No. 57 at 3; *see also* ECF No. 65 at 15.

To the extent that the EEOC's position is founded on the notion that the University was obliged to review its own documents as soon as they were produced back to it by the EEOC—a proposition for which it cites no legal authority—it is mistaken.  The Advisory Committee's note to Rule 502 suggests that such review is not necessary.  The Advisory Committee explicitly states

---

[14] The cases that the EEOC cites in support of its assertion that the University's delay should weigh in favor of waiver are thus inapposite.  ECF No. 64 at 37–38.  In *SEC v. Cassano*, the court faulted the producing party for waiting twelve days between when it was put on notice by the opposing party that a specific putatively-privileged document had been produced and the producing party's determination that the document was, indeed, privileged.  189 F.R.D. 83, 84–85 (S.D.N.Y. 1999).  Similarly, in *LaSalle Bank National Association v. Merrill Lynch Mortgage Lending Co.*, the producing party was put on notice that a privileged document had been produced when it was introduced as an exhibit at a deposition of one of its employees but nevertheless waited for one month before requesting the return of the document.  2007 WL 2324292, at *2–3 (S.D.N.Y. Aug. 13, 2007).  The court found that the delay between when the party was put on notice and its action to rectify the error supported a finding of waiver.  *Id.* at *5.  Here, although it is not clear form the record before the Court when, precisely, the University discovered that the EEOC had possession of its privileged material, the EEOC makes no allegation the University failed to act promptly after it learned that fact.  *See id.* ("[A]n inadvertent disclosure may be remedied where the privilege is immediately asserted upon discovery of the disclosure[ ] and a 'prompt request' is made for return of the document(s) . . . ." (quoting *Liz Claiborne, Inc. v. Mlle. Knitwear, Inc.*, No. 96 Civ. 2064, 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996))).  Rather, as discussed above, the agency focusses (inappropriately) on the time between when the EEOC produced the documents to the University and when the University attempted to claw them back.

that a party need not engage in post-production review of documents that it has produced; instead the privilege-holder must "follow up" only if there is an "obvious indication[ ] that a protected communication of information has been produced inadvertently." Fed. R. Evid. 502, advisory committee's note (revised Nov. 28, 2007). It is not clear why a different rule, requiring the University immediately to review its own documents when produced by the EEOC, should apply here. Thus, any such duty would be triggered only by "obvious indications" that privileged material had been disclosed. Courts have found such "obvious indications" where, for example, a party's privileged document is introduced at a deposition taken by the opposing party, *see, e.g.*, *Orthopaedic Hosp. v. DJO Global*, No. 3:19-cv-00970, 2020 WL 5363307, at *7–8 (S.D. Cal. Sept. 8, 2020), where a party's privileged document is attached as an exhibit to an opposing party's court filing, *see, e.g.*, *Smith v. Auto-Owners Ins. Co.*, No. 15-cv-1153, 2016 WL 11117291, at *6 (D.N.M. Oct. 5, 2016), or where an opposing party's court filing obviously relies on a party's privileged material, *see, e.g.*, *Doe v. Bedford Cnty.*, No 6:19-cv-00043, 2020 WL 2832226, at *8–9 (W.D. Va. May 29, 2020). The EEOC points to no similar occurrence that put the University on notice that its privileged material had been disclosed to the EEOC by Ms. Williams. Rather, the EEOC argues that the University knew that "it was possible, if not likely, that purportedly privileged information existed in [Ms. Williams'] University email." ECF No. 64 at 36. That is insufficient, even more so because the University could not determine how "likely" it was that "purportedly privileged information existed" in the subset of emails Ms. Williams had provided to the EEOC when the agency kept the University in the dark as to which emails had been disclosed. Moreover, as noted above, it was not unreasonable for the University to believe that Ms. Williams and counsel for the EEOC would have guarded against accessing the University's privileged material.

Finally, even if the University were under some obligation to promptly review the EEOC's production for privileged material, the failure to do so here would be excused. As counsel for the University represented to the Court in the hearing on this dispute, at the time EEOC made its production, "the COVID crisis was breaking, the university had other things, obviously, that it was focused on and had asked [counsel] to pause [their] efforts during [the] emergency" (ECF No. 57 at 3), although the University continued to comply with already-scheduled deadlines and to respond to discovery issues raised by the EEOC (ECF No. 65 at 15 & n.7; ECF Nos. 61-20 through 61-24). That is hardly surprising. The pandemic caused the Mayor of the District of Columbia to declare a state of emergency on March 11, 2020; a national emergency was declared on March 13, 2020. *See, e.g.*, *In re: Court Operations in Exigent Circumstances Created by the COVID-19 Pandemic*, Standing Order 20-9 (BAH) (D.D.C. Mar. 16, 2020) ("Standing Order 20-9"). By March 16, 2020, this Court had severely limited its operations—limitations that lasted until September 14, 2020, when the Court entered the second of four phases in its Continuation of Operations Plan for the COVID-19 Pandemic. *See* Standing Order 20-9; Notice as to Court Operations: Transition to Phase 2 Beginning Sept. 14, 2020 (D.D.C. Sept. 11, 2020). Similar measures were taken by businesses across the country, including law firms and universities. *See, e.g.*, *Law Firm Updates: COVID-19's Impact on the Business of Law*, Thomson Reuters (July 20, 2020), https://www.legalexecutiveinstitute.com/law-firm-updates-covid-19; *Important COVID-19 Message from President LeBlanc,* GW Coronavirus Response (Mar. 16, 2020), https://coronavirus.gwu.edu/important-covid-19-message-president-leblanc. Under such exigent circumstances, the delay between the EEOC's production of the documents at issue on March 20, 2020, and the University's discovery that the documents were privileged on or about May 22,

2020—assuming such delay is relevant which, as discussed above, it is not—was not unreasonable, as it occurred during the height of the initial disruption caused by the pandemic.

To the extent that Rule 502(b) is applicable, the University has met all three of its requirements; the Court therefore rejects the EEOC's argument that the University waived privilege by failing to take reasonable steps to prevent disclosure or by failing to promptly address the disclosure under that rule.

### 2. Selective Disclosure and "At-Issue" Waiver

The EEOC also contends that the University waived privilege based on the "selective disclosure" or "at issue" doctrines.   A party can waive the protections of the attorney-client privilege through implication by selectively disclosing privileged material "to obtain a tactical advantage."   *Bowles v. Nat'l Ass'n of Home Builders*, 224 F.R.D. 246, 257 (D.D.C. 2004); *see also, e.g.*, *Trs. of Elec. Workers Local 26 v. Tr. Fund Advisors, Inc.*, 266 F.R.D. 1, 10 (D.D.C. 2010).   Attorney-client privilege can also be waived when a party places privileged material at issue by "assert[ing] reliance on an attorney's advice as an element of a claim or defense."   *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Sedco Int'l S.A. v. Cory*, 683 F.2d 1201, 2016 (8th Cir. 1982)); *see also Trs. of Elec. Workers Local 26*, 266 F.R.D. at 11.   Here, the EEOC contends that the University waived attorney-client privilege over these (and related) documents by (1) relying on other communications between Ms. Williams or Mr. Aresco and the University's Office of General Counsel and (2) asserting in a document produced in this case that the pay differential between Ms. Williams and her comparator, Mr. Aresco, was justified in part by the fact that Mr. Aresco's "typical" workday "involved substantively working on a variety of employment, finance[,] and legal issues."   ECF No. 64 at 14, 33–35; ECF No. 61-4 at 14.   Neither argument succeeds.

The "selective disclosure" argument fails on the basis of a "fundamentally mistaken premise" underlying the EEOC's position. *Trs. of Elec. Workers Local 26*, 266 F.R.D. at 10. In order for disclosure of certain material to effect a waiver of attorney-client privilege, the material disclosed must itself be privileged. *See id.* at 11 ("Defendants' notion that I should also consider the disclosure of non-privileged information as a waiver by plaintiffs of privileged information that deals with the same subject matter is flat out wrong."); *see also, e.g.*, *Aiossa v. Bank of Am., N.A.*, No. CV 10-01275, 2011 WL 4026902, at *5 (E.D.N.Y. Sept. 12, 2011) (noting that disclosure of non-privileged material cannot waive attorney-client privilege). Here, the EEOC has made no argument that the documents the University has produced reflecting communications with its Office of General Counsel are privileged; indeed, it has asserted that they are not. ECF No. 64 at 9 n.4. The Court agrees, as its review of the communications the EEOC has submitted (under seal) to support its claim that the University waived privilege by selectively disclosing protected documents finds that none is covered by attorney-client privilege. *See, e.g.*, ECF No. 64-1 at 2–7, 13–20, 25, 27–30, 32, 36–40, 53–57.

The question then becomes whether the University has placed privileged material at issue by "assert[ing] reliance on an attorney's advice as an element of a claim or defense." *In re Cnty. of Erie*, 546 F.3d at 228. Courts have rejected the notion that merely pleading a claim or affirmative defense to which privileged communication might be relevant puts protected information at issue such that it is discoverable. *See, e.g.*, *Trs. of Elec. Workers Local 26*, 266 F.R.D. at 13 ("A mere indication of a claim or defense certainly is insufficient to place legal advice at issue." (quoting *In re Cnty. of Erie*, 546 F.3d at 229)). Rather, "[t]he key to a finding of implied waiver [in these circumstances] . . . is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a

claim or defense." *In re Cnty. of Erie*, 546 F.3d at 228.  The EEOC's showing falls far short of that standard.

The EEOC's argument hinges on the University's production in this litigation of its position statement filed as a response to Ms. Williams' charge of discrimination in administrative proceedings before the EEOC.  ECF No. 64 at 33 ("Position Statement").  As noted, that document asserts that Mr. Aresco's higher pay was justified in part because he "substantively work[ed] on . . . legal issues" as part of his job.  ECF No. 61-3 at 14.  According to the EEOC, the circumstances of the University's production of that document necessitate that it will rely on protected attorney-client communications to establish its defense.  Specifically, the agency states that the University produced the Position Statement in response to the EEOC's Request for Production No. 1, which the agency characterizes as "seeking documents that the University relies on to support its claims and defenses."  ECF No. 64 at 15; ECF No. 61-6 at 3 (Request for Production No. 1); ECF No. 61-7 at 3 (identifying the Bates range associated with the Position Statement as responsive to Request for Production No. 1).  The University later identified the Position Statement as responsive to the EEOC's Requests for Production seeking documents (1) describing Mr. Aresco's job duties, (2) describing Ms. Williams' job duties, (3) relating to Mr. Aresco's hiring, and (4) relating to Mr. Aresco's pay.  ECF No. 64 at 15; ECF No. 61-29.

The EEOC has not explained how the production of the Position Statement—a non-privileged document of seventeen pages that includes a single sentence mentioning "legal issues"—could work a broad waiver of protection over the University's attorney-client communications involving Mr. Aresco and/or Ms. Williams, on the one hand, and the Office of General Counsel, on the other.  Even the fact that the University identified the Position Statement as responsive to Request for Production No. 1—a request that does not, by the way, ask for

documents upon which the University *will* rely, but, rather, for documents catalogued in the University's initial disclosures (ECF No. 61-6 at 3) as material that the University "*may* use to support its claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)—is, at most, a "mere indication of a . . . defense" that "certainly is insufficient to place legal advice at issue." *Trs. of Elec. Workers Local 26*, 266 F.R.D. at 13; *see also, e.g.*, *Gardner v. Major Auto. Cos.*, No. 11 Civ. 1664, 2014 WL 1330961, at *5, 7 (E.D.N.Y. Mar. 31, 2014) (finding that deposition testimony "refer[ing] to the fact of [a defendant's] consultations with [an attorney] and reliance upon [the attorney's] counsel" did not establish that the defendant was relying on privileged communications to establish a defense).  That is a far cry from a situation in which a party will necessarily depend on privileged information, such as a "legal malpractice action[ ]," a "suit[ ] by an attorney against a former client for legal fees," or a case "where advice of counsel is raised as a defense." *Feld v. Fireman's Fund Ins. Co.*, 292 F.R.D. 129, 139 (D.D.C. 2015).  Indeed, the University has expressly disclaimed any intention at this time to rely on privileged material to support its defenses.[15]  ECF No. 57 at 4, 35; ECF No. 58 at 26; *see Gardner*, 2014 WL 1330961, at *5–7 (relying on the defendant's representation that it did not intend to rely on privileged communications to find that the defendant had not waived privilege).  And, as the University points out, to the extent that Ms. Williams' or Mr. Aresco's work with the Office of General Counsel becomes relevant, it can be proved and challenged through testimony and non-privileged material.  ECF No. 65 at 11.

---

[15] The University has reserved its right to change course on that issue and recognized that, if it does so, it will waive privilege over all communications reflecting Mr. Aresco's and Ms. Williams' communications with the University's Office of General Counsel.  ECF No. 58 at 26; *see also* ECF No. 57 at 35.  Nevertheless, "at the moment of this writing," *Gardner*, 2014 WL 1330961, at *7, the University does not intend to use privileged attorney-client material to support its case.  The EEOC's suggestion that the University in November 2019 agreed to produce privileged emails reflecting Mr. Aresco's substantive work on legal issues (ECF No. 64 at 34) has been entirely undermined by the University's submissions, which make clear that it never offered to produce privileged material to the agency (ECF No. 65 at 12 n.4; ECF No. 65-1, ¶¶ 6–7 (affirming that the University proposed to "produce *non-privileged* emails reflecting Aresco's work with the University's Office of General Counsel").

In short, there is no basis to conclude that the University will "advance a . . . defense that relies on [privileged] materials that the [EEOC] needs to effectively contest or impeach the [defense]," *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 17 C 1973, 2018 WL 1804350, at *7 (N.D. Ill. Apr. 17, 2018), and nothing to justify a finding that the University has waived privilege over communications between Mr. Aresco and/or Ms. Williams and the University's Office of General Counsel.

### D.    Remedy

The University seeks an order requiring that

> (1) the EEOC immediately return or destroy the University's privileged documents and certify in writing that it has done so; (2) the EEOC be prohibited from using or referring to the privileged documents in this case; (3) the EEOC submit sworn answers to the questions in the University's May 22 letter (regarding (a) all persons who reviewed the documents; (b) how long the EEOC was in possession of the documents; and (c) why the EEOC did not bring the documents to the University's attention); (4) the EEOC pay all fees and costs that the University has incurred or will incur in connection with briefing and arguing this dispute; and (5) such other relief as the Court deems just and proper for violation of the Federal Rules, its Protective Order, and applicable ethics standards.

ECF No. 58 at 26–27.  While some of that relief is justified, some is overkill.

Certainly, the EEOC must return or destroy all copies of the July 2016 Email Chain and the July–September Email Chain.  Rule 26(b)(5)(B) requires that.  The Court will also order the EEOC to certify that it has done so.  The EEOC will also be ordered not to use or disclose the information at issue.  On the other hand, it is not clear why the University needs "sworn answers to the questions in the University's May 22 letter (regarding (a) all persons who reviewed the documents; (b) how long the EEOC was in possession of the documents; and (c) why the EEOC did not bring the documents to the University's attention)."  ECF No. 58 at 26.  Ms. Peterson has asserted in open court that (1) the EEOC received the documents in November 2019 and (2) she was the only person who reviewed the documents after the University made its claim of privilege.

36

ECF No. 57 at 15, 30.  Given the resolution of this dispute, it is not clear how the third question—why the EEOC did not alert the University about them—would make a material difference.

The more difficult question is whether sanctions—in the form of attorney's fees or non-monetary relief—are justified on the facts of this case.  Even where, as here, a sanction is not authorized by statute or rule,[16] courts retain inherent powers "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," including "the ability to fashion an appropriate sanction for conduct that abuses the judicial process."  *Peterson v. PNC Bank*, No. 6:18-cv-84, 2019 WL 3037805, at *3 (M.D. Fla. July 11, 2019) (internal citation omitted) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 44–45 (1991)).  Many courts have held that a violation of Rule 26(b)(5)(B) can be the basis for sanctions.  *See, e.g.*, *Peterson*, 2019 WL 3037805, at *4 (awarding attorney's fees for a violation of Rule 26(b)(5)(B)); *Regions Bank v. Chi. Title Ins. Co.*, No. 10-80043-Civ, 2011 WL 13225145, at *2 (S.D. Fla. July 8, 2011) ("The rule's clarity favors sanctions.  It does not contemplate an attorney deciding whether the claim is valid.  Nor does it take effect only if the documents are privileged."), *aff'd*, 2011 WL 13225147 (S.D. Fla. Nov. 7, 2011); *Marshall v. McGill*, No. CV 10-1436, 2011 WL 13118589, at *3 (D. Ariz. June 8, 2011) ("Defendants obviously disputed

---

[16] Rule 26(b) does not mention sanctions and reliance on Rule 37(b), which explicitly authorized imposition of sanctions in the context of discovery, is inappropriate unless a court order has been violated.  *See* Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 37(b); *see also Batchelor v. Geico Cas. Co.,* No. 6:11-CV-1071, 2015 WL 12839175, at *2 (M.D. Fla. Mar. 31, 2015) (rejecting the argument that Rule 37 authorizes sanctions for a violation of Rule 26(b)(5)(B)).  Although a violation of the Protective Order entered in this case might support an award of sanctions under Rule 37(b), *see, e.g.*, *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011) (stating, "The court agrees with the many other courts that have concluded that attorney's fees and costs, as well as other appropriate sanctions, may be awarded under Rule 37(b)(2) for a violation of a protective order," and collecting cases), *aff'd sub nom. Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is thus significant authority in support of the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders.");  *accord Schiller v. City of New York*, No. 04 Civ. 7921, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) (collecting cases); *but see Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001) (holding that violation of a protective order entered under Rule 26(c) will not support an award of sanctions under Rule 37(b)), as noted above, the Court has not addressed the question of whether the EEOC violated the Protective Order in light of the University's concession that the Protective Order "was not intended to cover the situation at issue here."  ECF No. 65 at 19.

Plaintiff's claim that the document was privileged but that issue was for the court, not Defendants, to resolve.  Given the clear violation of Rule 26(b)(5)(B) . . . a sanction is warranted.  The court will, therefore, order Defendants' counsel to pay the attorney's fees incurred by Plaintiff in presenting this issue to the court . . . .").  Moreover, just as ethical rules can provide guidance to a court in determining whether Rule 26(b)(5)(B) has been violated, they can also inform a court's decision as to whether to use its inherent power to sanction.  *See, e.g.*, *Shepherd v. ABC*, 62 F.3d 1469, 1483 (D.C. Cir. 1995)

The Supreme Court has warned, however, that a court's inherent powers "must be exercised with restraint and discretion."  *Chambers*, 501 U.S. at 44.  Thus, "a finding of bad faith is required for sanctions under the court's inherent powers."  *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992).  More specifically, "the exercise of such inherent authority [to sanction a litigant] is, under the law of this Circuit, reserved for those instances where a party establishes by clear and convincing evidence that a party committed sanctionable misconduct that is tantamount to bad faith."  *Tadayon v. Greyhound Lines, Inc.*, No. 10-Civ-1326, 2012 WL 2048257, at *4 (D.D.C. June 6, 2012).  Here, there is not sufficient evidence of bad faith to justify an award of sanctions.  To be sure, Ms. Peterson's imprudent review of the documents at issue after the University had informed her of its claim of privilege violated her obligations under the Rule 26(b)(5)(B).  However, in similar situations—where the party who has violated the rule has not disseminated or made use of the privileged information—courts have been loath to impose sanctions.  *See, e.g.*, *Carnahan v. Alpha Epsilon Pi Fraternity, Inc.*, No. 2:17-CV-00086, 2018 WL 5825310, at *3 (W.D. Wash. Nov. 7, 2018) (declining to impose sanctions under Rule 26(b)(5)(B) where the plaintiff reviewed privileged material "but [ ] did not specifically make use of it"); *Arnstein & Lehr LLP v. Etkin & Co.*, No. 15-CV-62703, 2016 WL 11501337, at *4 (S.D.

Fla. Nov. 23, 2016) (declining to impose sanctions under Rule 26(b)(5)(B) where the party who violated the rule "had not disclosed the substance of the privileged communication"); *cf. Regions Bank*, 2011 WL 13225147, at *6  (declining to impose sanctions even where counsel "violated Rule 26(b)(5)(B) multiple times by his refusal to return the documents[ ] and his repeated use and disclosure of the documents").

The Court therefore declines to impose sanctions against Ms. Peterson or the EEOC at this time.  The EEOC is warned, however, to assiduously comply with the letter and spirit of the Federal Rules of Civil Procedure and its ethical responsibilities, as further breaches of its duties under Rule 26(b)(5)(B) may well result in sanctions.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's "Motion for an Order Requiring the EEOC to Return or Destroy the University's Privileged Documents" (ECF No. 58) is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that, within three days of the date of this Memorandum Opinion and Order, the EEOC shall return or destroy the all copies in its possession, custody, or control of the documents identified as EEOC0001110–EEOC001112 and EEOC0001075–EEOC001086 and certify in writing to Defendant that it has done so.  It is further

**ORDERED** that, within three days of the EEOC's certification that it has returned or destroyed all copies of the documents at issue, Defendant shall produce to the EEOC redacted copies of the documents identified as EEOC0001110–EEOC001112 and EEOC0001075–EEOC001086, withholding only the portions of those documents identified as privileged herein. It is further

**ORDERED** that the EEOC is prohibited from using, referring to, or disseminating the privileged portions of the documents identified as EEOC0001110–EEOC001112 and EEOC0001075–EEOC001086.

**SO ORDERED.**

Date:  November 5, 2020

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE