IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |  |
| Plaintiff, | ) ) | Civil Action No.:  1:17-cv-01978-CKK |
| v. | ) ) ) |  |
| THE GEORGE WASHINGTON UNIVERSITY, | ) ) |  |
| Defendant. | ) ) ) |  |

**EEOC'S OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE EEOC'S OPPOSITION TO DEFENDANT'S
STATEMENT OF UNDISPUTED MATERIAL FACTS**

## <u>TABLE OF CONTENTS</u>

I.      Introduction…………………………………………………………………......1

II.     The University's Motion to Strike should be denied because EEOC met the
        requirements of Local Rule 7(h) and this Court's Order……………………….........3

III.    The University's Motion to Strike does not reflect a good-faith interpretation
        of the local rule or this Court's order……………………………………………......14

IV.     The University's Motion to Strike should be denied…………………………….....22

        1.      EEOC provided precise citations to the record to support its disputes…………..22

        2.      Where EEOC disputes assertions "in part," EEOC explains which
                part is disputed……………………………………………………………….......29

        3.      EEOC      has      not      engaged      in      improper      legal
                argument…………………………………………………………………30

        4.      EEOC has not provided irrelevant or impermissible information in its
                responses to the University's assertions of fact…………………………….33

V.      Conclusion...………………………………………………………………………34

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page(s)**

*Bura v. George Washington University*,
  No. 1:15-cv-00533 ..................................................................................... *passim*

*Burke v. Gould*,
  286 F.3d 513 (D.C. Cir. 2002)...........................................................6, 15, 25, 30

*Chambliss v. Nat'l R.R. Passenger Corp.*,
  Civ. A. No. 05-2490, 2007 WL 581900 (D.D.C. Feb. 20, 2007) (Kollar-
  Kotelly, J.)................................................................................................7, 12

*Gibson v. Office of the Architect of the Capitol*,
  No. 00-cv-2424, 2002 WL 32713321 (D.D.C. Nov. 19, 2002) (Kollar-Kotelly,
  J.)..............................................................................................................24

*Hajjar-Nejad v. George Washington Univ.*,
  No. 10-626, 2013 U.S. Dist. LEXIS 207038 ...........................................32

*In Johnson v. District of Columbia*,
  No. 17-883, 2019 U.S. Dist. LEXIS 134306 (D.D.C. Aug. 9, 2019) ....................................32

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
  101 F.3d 145 (D.C. Cir. 1996)........................................................... *passim*

*Jimenez v. Wolf*,
  No. 19-CV-2055, 2020 WL 13546497 (D.D.C. Sept. 29, 2020)............................14

*Lurie v. Mid-Atlantic Permanente Med. Group*,
  729 F. Supp. 2d 304 (D.D.C. 2010) ....................................................6, 8, 15

*Robertson v. Am Airlines*,
  239 F. Supp. 2d (D.D.C. 2002) ........................................................26, 32

*S.E.C. v. Banner Fund Int'l*,
  211 F.3d 602 (D.C. Cir. 2000) ..............................................................14

*Waggel v. George Washington University*,
  No. 1:16-cv-01412 ..................................................................20, 34, 35

*Wilkins v. District of Columbia*,
  Civ. A. No. 17-884, 2019 U.S. Dist. LEXIS 134308 (D.D.C. Aug. 9, 2019)..............29, 30, 32

*Winmar Constr., Inc. v. Kasemir*,
  233 F. Supp. 3d 53 (D.D.C. 2017) ..................................................8, 9, 15, 25

**Other Authorities**

D.C. R. Prof. Conduct 3.3(a)(1) ........................................................................25

Fed. R. Civ. Proc. 52(c)(1)(B) ........................................................................24

Fed. R. Civ. Proc. 56(a) ........................................................................28, 29

Fed. R. Civ. Proc. 56(e) ........................................................................5

Local Rule 7(h) ........................................................................ *passim*

Local Rule 7(h)(1) ........................................................................4

Local Rule 7(m) ........................................................................22

Local Rule 7(m)'s ........................................................................22

## I.        Introduction

EEOC's Opposition to Defendant's Statement of Undisputed Material Fact (Doc. 134-2) (EEOC's "Opposition" or "EEOC OPP") meets the requirements of Local Rule 7(h) and this Court's October 7, 2022 Order (Doc. 111).  EEOC filed a separate Opposition that responds to the University's fact assertions in correspondingly numbered paragraphs that state whether EEOC disputes, does not dispute, or disputes in part each fact assertion.  Where EEOC disputes a fact assertion only in part, EEOC describes what it is that EEOC disputes.  EEOC's Opposition supports the disputes it identifies with precise citations to the record materials EEOC relies on. And EEOC's Opposition includes all information relevant to its response to each assertion in its correspondingly numbered paragraph.  As such, EEOC's Opposition clearly distinguishes the disputed facts from the undisputed facts, identifies those facts among the University's assertions that EEOC contends are not material, and identifies those portions of the record that are pertinent to the disputes EEOC identifies.

Despite EEOC's compliance with the Local Rule and this Court's directives, the University filed a Motion to Strike EEOC's Opposition to Defendant's Statement of Undisputed Material Facts (Doc. 141) ("Motion to Strike") asking the Court to strike EEOC's Opposition and deem all facts in the University's Statement of Undisputed Material Facts (the University's "SOF") as undisputed.  First, the University claims that EEOC's Opposition should be stricken because EEOC failed to do two things in its Opposition that the University contends Local Rule 7(h) and the Court's Order required the Commission to do.  The University contends: (1) EEOC did dispute facts the University asserted, but allegedly EEOC did not provide record citations; and (2) EEOC did state whether each fact asserted by the University is disputed and did state which part of a fact assertion is disputed, but EEOC did not also add a separate statement saying that each part of each

fact assertion that EEOC does not dispute is also admitted.  Second, the University claims that EEOC's Opposition should be stricken because the Commission did two things the University contends the Local Rule and the Court's order prohibited the Commission from doing: (1) stating whether a fact asserted by the University is immaterial; is unsupported by the record evidence cited by the University; contains a material omission or clarification found in the record evidence cited by the University or found elsewhere in the record; or should be read or considered in light of record evidence that provides relevant context, explanation, or other material information; and (2) including with some responses information that the Commission believes is relevant to its responses but that the University does not think is relevant.

The Court should deny the University's Motion to Strike.  As set forth below, EEOC did provide record citations as required, and a party's statement that it disputes only a particular part of a fact assertion constitutes an admission that the remainder is uncontested.  Further, neither the Local Rule nor the Court's order prohibited EEOC from responding that facts the University asserted are undisputed are not material, are not supported by the record evidence cited, or must be considered together with other record evidence.  To the contrary, the Court's order required the Commission to include with its responses "any information relevant to its response."  That the University disagrees about what is relevant to EEOC's responses is not a basis for striking the Commission's Opposition; indeed, the University had ample opportunity in its own briefings to state why is believes material cited by the Commission is not relevant, persuasive, or dispositive.

Further, the University's own filings, in this litigation and elsewhere before this Court, as well as the University's resistance to genuine conferral before filing its Motion to Strike, demonstrate that the University's Motion to Strike does not reflect the University's own good-faith interpretation of the Local Rule or this Court's order.

Ultimately, each of the accusations the University levels at EEOC's Opposition in its Motion to Strike is illusory and unfounded.  EEOC has provided precise citations to the record to support its disputes.  When EEOC has disputed an assertion "in part," it has explained which part is disputed.  EEOC has not engaged in improper legal argument.  And EEOC has not provided irrelevant or impermissible information in its responses to the University's assertions of fact.  Accordingly, the University's Motion to Strike should be denied in its entirety.

**II.      The University's Motion to Strike should be denied because EEOC met the requirements of Local Rule 7(h) and this Court's Order.**

Local Rule 7(h)(1) places two primary requirements on a party's opposition to a motion for summary judgment:

> (1) it must be "accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue to be litigated,"

> and

> (2) the opposition statement must "include references to the parts of the record relied on to support the statement."

In the instant litigation, this Court has further elucidated the required Local Rule 7(h) procedure by ordering:

> (3) "[t]he party responding to a statement of material facts must respond to each paragraph with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied.  If a paragraph is admitted only in part, the party must specifically identify which parts are admitted and which parts are denied."

> (4) "[t]he responding party must include any information relevant to its response in its correspondingly numbered paragraph, with specific citations to the record.  However, if the responding party has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs **at the end** of is responsive statement of facts."

Doc. 111, p. 2 (emphasis in original).

The Local Rule and this Court's order further provide that the Court "may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 7(h)(1); *see also* Doc. 111, p. 2.

The purpose of these rules is to "assist the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively."  *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

> The moving party's statement specifies the material facts and directs the district judge and the opponent of summary judgment to the parts of the record which the movant believes support his statement.  The opponent then has the opportunity to respond by filing a counterstatement and affidavits showing genuine factual issues. The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record.

*Id.* at 150-151, *quoting Gardels v. Central Intelligence Agency*, 637 F.2d 770, 773 (D.C. Cir. 1980).  This procedure "places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record."  *Id.* at 151.

Where a party does not comply with the applicable rules governing its opposition, the Court is empowered, of its own initiative, to address the deficiency in any number of ways, including not only by considering facts that were not properly disputed to be undisputed for purposes of the motion, but, alternatively, by giving an opportunity to properly support or address the fact, or by issuing any other appropriate order.  Fed. R. Civ. Proc. 56(e); LCvR 7(h)(1); Doc. 111, p. 2.  No procedure or platform is offered in either Rule or the Order for a party to move to strike a purportedly non-compliant Local Rule 7(h) filing.

Furthermore, the D.C. Circuit has cautioned, "in view of the severity of dismissal of a potentially meritorious claim," treating an issue as conceded because the responding party did not fully comply with the Local Rule is a remedy that should be reserved only for cases of "egregious conduct." *Burke v. Gould*, 286 F.3d 513, 518 (D.C. Cir. 2002).  Accordingly, in the absence of egregious conduct, a motion to strike an opposition to a movant's statement of facts must be denied. *Lurie v. Mid-Atlantic Permanente Med. Group*, 729 F. Supp. 2d 304, 315 (D.D.C. 2010). Thus, in *Lurie*, for example, the court held that although the plaintiff's opposition statement was "inappropriately long and evasive, the Court [could not] say that a statement of fact which otherwise comports with Local Rule 7(h) by citing to the record, separately responding to each of defendant's statements, and refraining from legal argument is egregious and ought to be stricken," and the court denied the defendant's motion to strike. *Id.* at 316.

This Circuit has cited *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145 (D.C. Cir. 1996), as describing egregious conduct that justifies striking an opposition to a statement of material facts. *Burke*, 286 F.3d at 518.  In *Jackson*, plaintiff's counsel was warned early in the litigation against taking a "cavalier attitude towards the rules and the court's directives" after seeking an extension of time fewer than four days before a deadline, in clear violation of the court's scheduling order, without providing any explanation for why the rule had not been followed. *Jackson*, 101 F.3d at 147.  Despite the warning, plaintiff's counsel repeatedly sought additional extensions of time without regard for the four-days-prior directive, which elicited further warnings from the Court, including the admonishment that "Counsel continue to follow their own timelines and procedures in lieu of the court's.  You put your client's case at risk." *Id.* at 148.  Nonetheless, in response to the defendant's 27-page statement of material facts, the plaintiff filed an opposition consisting of five one-sentence entries setting forth legal questions for

the court to resolve instead of disputing <u>any</u> of the law firm's assertions of material facts. *Id.* at 148, 149. The plaintiff's opposition statement contained <u>no</u> citations to record evidence, depositions, or affidavits. *Id.* at 148. Further, while the plaintiff's memorandum of law included a 31-page statement of "relevant facts" that did contain citations to record evidence, it could not be considered as the plaintiff's opposition statement pursuant to the Local Rule, as any disputes of fact identified in it were so intermingled with immaterial factual allegations and legal argument that "[i]n order to identify material disputed issues that would preclude the entry of summary judgment, the court would have to sift and sort through the record," undermining the purposes of the Local Rule entirely and "improperly placing the burden on the court, rather than on the opposing party or his counsel, to 'winnow the wheat from the chaff.'" *Id.* at 148, 153, *quoting Bell, Boyd, & Lloyd v. Tapy*, 896 F.2d 1101, 1103 (7th Cir. 1990).

In a similar vein, this Honorable Court has found egregious conduct where, although the Court gave the plaintiff a second opportunity to file its opposition statement after finding that the initial opposition "did not respond to the Defendants' Statement in any organized way," the revised opposition the plaintiff filed still failed to respond to the defendants' statement of facts by admitting or denying each paragraph. *Chambliss v. Nat'l R.R. Passenger Corp.*, Civ. A. No. 05-2490, 2007 WL 581900, at \*1-2 (D.D.C. Feb. 20, 2007) (Kollar-Kotelly, J.). Instead, the plaintiff's opposition provided 18 broad headings that did not correspond to the paragraphs in the defendant's statement, each of which was followed by numerous, lengthy bullet-pointed paragraphs containing both factual and legal arguments, including case citations. *Id.* at \*2. As such, the Court was not able to parse those specific facts the plaintiff considered to be in dispute. *Id.* Further, instead of correlating each specific factual assertion the plaintiff made to supporting record citations, the plaintiff simply followed each lengthy set of bullet-pointed paragraphs with one long string citation

to multiple documents, including, in each string citations, "a general citation to Plaintiff's deposition, without any pincite to suggest which portions of the 227-page transcript Plaintiff deem[ed] significant." *Id.*  In so doing, the plaintiff "failed completely to provide the Court with record support for his assertions." *Id.*

In contrast to these examples of egregious conduct, where a party's opposition statement cites to the record, separately responds to each of the movant's statements, and refrains from legal argument, the fact that the party has included additional material, beyond what may be strictly necessary to support a denial, in the same numbered paragraph with the denial of the movant's assertion should not be considered egregious conduct.  In *Lurie*, for example, the Court held there was not sufficient basis to strike the plaintiff's opposition statement even where the plaintiff responded to a 14-word assertion that a letter was sharply critical of a hospital's surgery department chair with a correspondingly numbered paragraph that spanned 4 pages and expounded on hospital policies and the Code of Ethics of the American Medical Association.  *Id.* at 315-316.

Indeed, a party's opposition statement that separately admits or denies each of the defendant's assertions and supports each dispute with record citations will meet the requirements of the Local Rule.  In *Winmar Constr. Inc. v. Kasemir*, for example, the defendant accused the plaintiff of responding to the defendant's statement of undisputed material facts with "improper, and in several instances, evasive or misleading denials" by "interspers[ing] extraneous allegations" and irrelevant allegations to try to create a disputed issue of fact.  Ex. A, *Winmar*, No. 14-cv-2112, Doc. 36, ECF p. 10-12 (July 22, 2016).  In fact, in the plaintiff's opposition statement, after admitting or denying defendant's assertions of fact in correspondingly numbered paragraphs, the plaintiff expounded, in the same paragraphs, on plaintiff's theory of the case, cross-referenced its memorandum in opposition to summary judgment, and sometimes made assertions without

7

corresponding citations to record evidence.  Ex. B, *Winmar*, No. 14-cv-2112, Doc. 35-1, ¶¶ 1, 2, 10 (July 8, 2016).  The court, however, found "no violation of Local Rule 7(h)," explaining that plaintiff's opposition, "'though not an archetype of good pleading,' when considered in conjunction with its Opposition as a whole, 'appear[ed] to identify the material facts that [were] in dispute with corresponding citations'" to the record.  *Winmar Constr., Inc. v. Kasemir*, 233 F. Supp. 3d 53, 64 n. 7 (D.D.C. 2017), *quoting Escamilla v. Nuyen*, 200 F. Supp. 3d 114, 120 (D.D.C. 2016).

Likewise, in another case before this Court in which the University challenged a plaintiff's opposition statement, the Court declined to take the drastic measure of striking the opposition or deeming the University's assertions of fact undisputed where the opposition, imperfect though it was, nonetheless served the purposes of the Local Rule.  In *Bura v. George Washington University*, No. 1:15-cv-00533, the plaintiff responded to the University's statement of undisputed material facts in concise, correspondingly numbered paragraphs that generally stated whether the plaintiff disputed or did not dispute the University's assertions and supported the plaintiff's disputes with citations to record evidence.  *Bura*, No. 1:15-cv-00533, Doc. 110-1, ECF p. 13-30 (Jan. 22, 2019), attached hereto as Ex. C.  However, the University argued that the plaintiff's response contained impermissible "hedging," editorial, argument, and conditional responses and asked the Court to deem large portions of the University's statement of facts as admitted.  *See Bura*, No. 1:15-cv-00533, Doc. 112, ECF p. 10-11 (Feb. 11, 2019), attached hereto as Ex D.  This Court was not convinced.  Acknowledging that the plaintiff's opposition statement was "not an archetype of good pleading," the Court nonetheless concluded it would consider it in ruling on the University's motion for summary judgment because the opposition served the purposes of the Local Rule in that the Court was able "'to decide [the] motion[ ] for summary judgment efficiently and

effectively' using Plaintiff's Statement and had not been 'obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories' in order to do so." *Bura*, No. 1:15-cv-00533, Doc. 120-1, ECF p. 4-5 n. 5 (July 9, 2019), attached hereto as Ex. E.

Notably, in *Bura*, the plaintiff's opposition to the University's statement of facts included a number of the features that the University claims here warrant striking EEOC's Opposition.  For example, the plaintiff accompanied many of her "dispute" and "does not dispute" responses with a brief statement contesting the materiality of the University's fact assertions.  *See* Ex. C, *Bura* Doc. 110, part B, ¶¶ 1-13, 15-22, 24-26, 47, 63-65, 82, 103-104, 106-107, 129-134, (contesting that the University assertion/s "lend[/s] any support to Defendant's Motion for Summary Judgment); part B, ¶¶ 51-57, 66-67, 69-72, 103-104, 129-134 (contending that the University's assertions are "irrelevant").  Further, in some paragraphs, the plaintiff expressly contested whether certain inferences could be drawn from the University's assertions. Ex. C, *Bura* Doc. 110, part B, ¶¶ 68, 75, 79-80, 110; see also ¶ 76.  In one paragraph, the plaintiff made express legal arguments, with citations to cases and regulations.  Ex. C, *Bura* Doc. 110, part B, ¶ 62 (stating, "[a]s a matter of law, Plaintiff may compare herself to higher paid males in similar positions requiring *less* skill, effort, or responsibility").  In some paragraphs, the plaintiff disputed the University's assertions without including any citations to the record.  Ex. C, *Bura* Doc. 110, part B, ¶¶ 14, 15, 73, 76, 78, 81, 92, 105, 135, 137.  The plaintiff also used cross-references to earlier paragraphs in the document as a shorthand instead of restating the same evidence and record citations again and again.  Ex. C, *Bura* Doc. 110, part B, ¶¶ 79-80, 83, 89, 93, 97, 101, 102 (incorporating by reference part A, "Genuine Issues Remaining for Trial," ¶¶ 12, 13, 14, 15, 16, 17).  Further, in some paragraphs, the plaintiff made partial denials without expressly stating which remaining portions of the University's assertions she did not dispute.  Ex. C, *Bura* Doc. 110, part B, ¶¶ 11, 13, 76, 83,

92 (disputing University assertions "insofar as…" and "to the extent…")  None of these features of the plaintiff's opposition prevented it from serving the purposes of the Local Rule, as the Court was still enabled by the plaintiff's statement to decide the summary judgment motion "efficiently and effectively." Ex E, *Bura* Doc. 120-1, ECF p. 4-5 n. 5.

In view of all of the foregoing, EEOC's Opposition in this case meets the requirements of the Local Rule and this Court's order, does not reflect any egregious conduct, and serves the purposes of the Local Rule and this Court's order.  As such, there is no basis for striking EEOC's Opposition or deeming the University's SOF undisputed.

EEOC's Opposition plainly meets the requirements of the Local Rule and the court's order:

(1) EEOC filed a separate Opposition.  *See* LCvR 7(h)(1).

(2) EEOC's Opposition supports the disputes it identifies with citations to the record materials EEOC relies on.  *See* LCvR 7(h)(1).  (In the few places where EEOC does not rely on any record material for its dispute, none is cited, but in keeping with its duty of candor, EEOC nonetheless states its dispute.)

(3) EEOC's Opposition responds to the University's fact assertions in corresponding numbered paragraphs that state whether EEOC disputes, does not dispute, or disputes in part each such fact assertion.  Where EEOC disputes a fact assertion only in part, EEOC describes what it is that EEOC disputes.  *See* Doc. 111, p. 2.

(4) EEOC's Opposition includes all information relevant to its response to an assertion in its correspondingly numbered paragraph, with specific citations to the record.  *See* Doc. 111, p. 2.

By adhering to these rules, EEOC has provided the Court with an Opposition that serves the purposes of the rules in every way.  EEOC clearly distinguishes the disputed facts from the undisputed facts among the University's assertions.  EEOC also has identified those facts among

the University's assertions that EEOC does not agree to be material.  And EEOC has identified those portions of the record that are pertinent to the disputes EEOC identifies.  *See Jackson*, 101 F.3d at 151 ("The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record").

Further, EEOC has not engaged in any egregious conduct.  EEOC has not, as the plaintiff in *Jackson*, filed an opposition statement that fails to dispute any of the Defendant's assertions of fact.  *Jackson* 101 F.3d at 148-149.  Nor has EEOC so intermingled its responses to the University's fact assertions with legal argument that the Court cannot determine which facts EEOC does or does not dispute.  *Id.* at 148, 153.  Nor has EEOC, as the plaintiff in *Chambliss*, filed an opposition that ignores the numbered paragraphs of the University's filing and attempts to assert disputes of fact in a structure that fails to respond to the University's assertions in any organized way.  *Chambliss*, 2007 WL 581900, at *1-2.  EEOC has not, as the plaintiff in *Jackson*, filed an opposition that is devoid of record citations.  *Jackson*, 101 F.3d at 148.  Nor has EEOC, as the plaintiff if *Chambliss*, lumped all of its record citations at the end of entire sections of argument containing numerous assertions of fact, nor cited to entire deposition transcripts without any pin cites.  *Chambliss*, 2007 WL 581900, at *2.

The Court's prior rulings in this case also do not point to egregious conduct on EEOC's part.  EEOC has not displayed a cavalier attitude towards the Court's rules or directives like the plaintiff in *Jackson*, 101 F.3d at 147, nor blatantly ignored any such rules or directives like the plaintiff in *Chambliss*, 2007 WL 581900, at *1-2.  For example, although the Court's order directed that a statement of material facts shall be concise, at the time EEOC filed its initial statement of facts, no order or Local Rule placed a page limit on statements of material facts, and,

given the nature of the claims in this case, which require comparison of the many job responsibilities of Ms. Williams and her comparator, EEOC was unaware that its statement of facts would not be considered concise. *See also*, Ex. F, *Waggel v. George Washington Univ.*, 1:16-cv-01412, Doc. 34 (Jan. 2, 2018) (University SOF containing 977 numbered paragraphs spanning 183 pages). Under those circumstances, the University also filed a "lengthy" SOF, which the University was later ordered to show cause why it should not also be stricken. Dec. 21, 2022 Minute Order. The University then filed its opposition statement of facts that, at over 80 pages, was far longer than the Court indicated would be "concise" under the rules, yet did not seek permission to do so. EEOC understands the Court's decision to strike EEOC's initial statement of facts, but EEOC submits that the initial statement of facts did not reflect disregard for the Court's rules or orders. To the contrary, EEOC believes its initial statement of facts reflected efforts to comply with the Local Rule and the Court's order by asserting only one fact per numbered paragraph and including precise citations to the record. Indeed, the vast majority of paragraphs were no longer than four lines.

Likewise, EEOC's January 27, 2023 Motion to Seal (Doc. 136) did not reflect disregard for this Court's rules or order – and certainly no cavalier or blatant disregard. While the University cites EEOC's previous filing of a motion to file material under seal that did not say whether the University consented to filing that material under seal, the University's long-standing position in this litigation is that *all* documents marked by the University as Confidential must be filed under seal. *See* Ex. G. The University's position, and past practice in the case concerning the filing under seal of materials marked confidential by the University, supports a good faith belief that EEOC's motion to file such material under seal was properly filed. *See* Doc. 79.

Moreover, while a few pages within a lengthy deposition exhibit were mistakenly included in the publicly filed version of that exhibit, EEOC acted immediately to correct the filing when the University brough it to EEOC's attention.  Although only a few pages of the exhibit needed to be corrected, the Commission agreed to withdraw the entire lengthy exhibit to make the process easier, quicker, and more efficient.  Given the volume of material exchanged in discovery in this litigation and the significant number of documents marked confidential by the University, the EEOC's oversight in including within a lengthy exhibit a few pages with confidentiality markings does not demonstrate disregard for the Rules or the Court's orders, and certainly no conduct that would warrant striking EEOC's Opposition.

The cases that the University cites to support its requested drastic remedy are readily distinguishable.  In *Jimenez v. Wolf*, No. 19-CV-2055, 2020 WL 13546497, at *8 (D.D.C. Sept. 29, 2020), the Court found that the plaintiff made "no reference to the government's statement [of facts] at all"; (2)" include[d] few citations to the record; and (3) where it does provide citations to the record, frequently either miscites the record or fails to cite competent evidence."  Similarly, in *S.E.C. v. Banner Fund Int'l*, 211 F.3d 602, 616 (D.C. Cir. 2000), the defendant did not file a statement "opposing the SEC's motion for summary judgment, *instead* he filed a response and an affidavit."  (Emphasis added).  Neither of these cases describe EEOC's Opposition, where the EEOC provided responses to each of the University's paragraphs.  There is no authority supporting the University's request for such drastic relief under these circumstances.

In view of all of the foregoing, any imperfections that may be found in EEOC's Opposition, in which EEOC was required to respond to 353 separately numbered assertions of fact, are not violations of the Local Rule or this Court's order, do not reflect egregious conduct, and therefore do not warrant striking EEOC's Opposition or deeming the University's SOF undisputed.  *See*

*Burke*, 286 F.3d at 518; Ex. E, *Bura* Doc. 120-1, ECF p. 4-5 n. 5; *Winmar*, 233 F. Supp. 3d at 64 n.7; *Lurie*, 729 F. Supp. 3d at 316 (although the plaintiff's statement was "inappropriately long and evasive, the Court [could not] say that a statement of fact which otherwise comports with Local Rule 7(h) by citing to the record, separately responding to each of defendant's statements, and refraining from legal argument is egregious and ought to be stricken"). Mindful of the Court's order regarding concise statements, EEOC sought to write its Opposition in a way that would comport with the Local Rules while maintaining the integrity of EEOC's responses. There is no basis for the University's Motion to Strike.

### III. The University's Motion to Strike does not reflect a good-faith interpretation of the Local Rule or this Court's order.

The University's own filings before this Court reveal that the complaints the University levels against EEOC's Opposition SOF in its Motion do not reflect the University's good-faith interpretation of the Local Rule and this Court's order. In the University's Response to EEOC's Statement of Undisputed Material Facts, Doc. 142-001 (the University's "Opposition" or "Univ. OPP"), the University employs each of the methods that it contends warrant striking EEOC's Opposition.

The University's Opposition purports to dispute numerous facts in the EEOC's SOF without providing any record citations. *See*, *e.g.*, ¶¶ 17, 27, 29, 33, 35, 36, 50, 53, 94, 95, 100, 104, 117, 118, 128, 179, 187, 207, 224, 253. For example, in Paragraph 207, the University denies EEOC's assertion that "Department staff continued to view Williams as an HR liaison and continued to go to her with HR Questions" without citations to any record material. The University simply argues that "[t]he phrase, 'Department staff continued to view Williams as an HR liaison,' is speculative, vague, and ambiguous, and unsupported by admissible evidence." The University says nothing at all to substantiate its denial of the assertion that department staff "continued to go

14

to [Williams] with HR Questions."  Indeed, in many University paragraphs without proper record support, the University denies the EEOC's assertions for reasons like the "speculative, vague, and ambiguous" contention in University Opposition paragraph 207 and other reasons not contemplated by Rule 7(h), such as a lack of knowledge or information (*see* ¶ 117).  *See also* Univ. OPP, Doc. 142-1, ¶¶ 8, 10, 16, 17, 21, 24, 26, 27, 29, 33, 35, 36, 40, 42, 43, 44, 49, 53, 54, 56, 60, 62, 68, 69, 73, 75, 77, 83, 84, 85, 86, 88, 90, 92, 94, 95, 96, 99, 100, 179, 204, 205, 221, 253, 256, 260.  These are forms of response the University has elsewhere argued requires deeming the asserted fact to be admitted.  *See*  Ex. D, *Bura* Doc. 112, ECF p. 10.

Further, despite asserting in its Motion to Strike that EEOC improperly used cross-references to reassert facts and record-material EEOC had articulated elsewhere (*see* Doc. 141, ECF p. 15), in the University's Opposition, the University itself cross-references other paragraphs within its Opposition SOF (*see* Univ. OPP, Doc. 142-1, ¶¶ 225, 229, 232, 233) and cites to portions of its own SOF in at least 36 paragraphs (*see* Univ. OPP, Doc. 142-1, ¶¶ ¶¶ 1, 4, 8, 10, 28, 32, 34, 55, 56, 57, 58, 61, 64, 67, 69, 77, 79, 80, 81, 101, 109, 121, 150, 151, 185, 186, 198, 200, 221, 223, 235, 249, 290, 296, 300, 301), including some citations that cite ranges of as many as 23 paragraphs of the University's SOF for one assertion (*see* Univ. OPP, Doc. 142-1, ¶¶ 185, 198).

The University's Opposition also is suffused with responses that would be considered non-responsive argument by the standards the University applies in its Motion to Strike.  *See, e.g.*, Univ. OPP, Doc. 142-1, ¶¶ 1, 4, 18, 28, 30, 39, 54, 63, 68, 91, 98, 99, 109, 112, 116, 128, 187, 266.  In the University's very first response, for example, it raises a dispute with words EEOC did not actually use in its SOF assertion.  In Paragraph 1 of EEOC's SOF, EEOC asserted that "Defendant hired Sara Williams to work in the Athletics Department as the Executive Assistant," and the University denies this allegation in part stating, "Williams served as the executive assistant

to the Director of Athletics and Recreation, Patrick Nero—not **to** the entire Department."  Univ.

OPP, Doc. 142-1, ¶ 1 (emphasis added).  EEOC did not assert Williams served as the executive

assistant "to" the entire Department, and, by the standards the University seeks to impose in its

Motion to Strike, the University's dispute with Paragraph 1 of EEOC's SOF is therefore

argumentative and attempts to manufacture a dispute where none actually exists.  By way of further

example, in response to EEOC's assertion, in Paragraph 187 of its SOF, that "When Athletics

Department personnel presented Aresco with questions relating to HR protocols or guidance, he

relayed them to Kayer," the University must and does admit that "Aresco sometimes relayed HR

questions to Kayer."  However, the University "**denies the allegations insofar as Paragraph 187**

**suggests that he relayed *all* questions 'relating to HR protocols or guidance to Kayer**."  Univ.

OPP, Doc. 142-1, ¶ 187 (bold emphasis added).  But EEOC's SOF no more asserted in ¶ 187 that

Aresco relayed "*all*" questions to Kayer than the University's Statement asserted in ¶ 38 that

Williams "merely" addressed envelopes.  *See* Doc. 141, ECF p. 17.  The University's response is

a denial of an inference, implication, or suggestion, not solely the fact alleged, which the

University has argued EEOC may not do.  *See id*.  Similarly, in Paragraph 28 of the University's

Opposition, the University responds to the EEOC's fact assertion that Williams created agendas

for head coaches' and senior staff meetings, by denying it in part and stating that it "denies that

Williams 'created the agenda' for senior staff meetings, **insofar as that implies that she exercised**

**independent judgment or authority** to decide what was on the agenda."  Univ. OPP, Doc. 142-

1, ¶ 28 (emphasis added).  Also, despite complaining that by disputing facts on the ground that

they are not material, EEOC improperly argued about the legal import of facts in the University's

assertion (*see* Doc. 41 at ECF p. 14-15), in the University's Opposition, the University incorporates

a confusing statement that the facts asserted by EEOC "are immaterial" ("and/or that [the

University] presently does not have sufficient evidence to dispute") into at least 17 paragraphs (*see* Univ. OPP, Doc. 142-1, ¶¶ 52 and n.1, 123, 124, 125, 127, 162, 163, 201, 202, 203, 237, 238, 259, 273, 274, 312, 319).

Further, the University repeatedly adds additional facts to its responses to EEOC SOF paragraphs beyond what is strictly needed.  *See*, *e.g.*, Univ. OPP, Doc. 142-1, ¶¶ 40, 112, 113, 116, 133, 153, 168, 316.  In more paragraphs where the University disputes language EEOC did not use, the University disputes EEOC's factual assertions that Nero promoted Aresco and increased his salary and that Nero awarded Aresco a $13,000 bonus by stating the University denies that Nero "unilaterally" promoted Aresco or "unilaterally" increased his salary and that the University denies that Nero "unilaterally" awarded the bonus.  Univ. OPP, Doc. 142-1, ¶¶ 112, 116.  Further, the University adds, in the same denial paragraphs, that Aresco's promotion was "approved" by the University's EEO Office, that Aresco's salary was "agreed to" by both EEO and the Compensation Department, and that Aresco's bonus "would have been approved" by HR and EEO. *Id.*  By way of an additional example, in Paragraph 168, the University denied EEOC's assertion that "Aresco did not become the Special Assistant as the result of a bona fide transfer" in part "on the ground that Aresco's hiring as the Special Assistant was, in fact, a **'lateral transfer.'**"  Univ. OPP, Doc. 142-1, ¶ 168.

By way of summary, the portions of the University's Opposition that would be violations of the Local Rule or this Court's Order according to the University's standards are set forth in the following table:

| Description of Violation(s) of Local Rule 7(h) and/or this Court's Order | Offending Responses by Paragraph Number |
|---|---|
| Paragraphs In Which Defendant Purports To Dispute Facts Without Appropriate Citations To The Record | 1, 10, 17, 21, 23, 27, 28, 33, 35, 36, 47, 48, 49, 50, 51, 53, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 71, 72, 77, 80, 81, 84, 89, 92, 94, 95, 96, 98, 100, 103, 104, 117, 118, 154, 176, 179, 192, 194, 195, 196, 197, 198, 199, 200, 207, 208, 209, 210, 211, 212, 218, 222, 223, 224, 225, 228, 229, 230, 232, 233, 234, 253, 261, 262, 263, 269, 271, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 286, 287, 288, 289, 290, 291, 292, 316 |
| Paragraphs In Which Defendant Disputes Facts "In Part" Without Specifically Identifying Which Part Is Admitted And Which Is Denied | 178 |
| Paragraphs In Which Defendant Improperly Relies On Legal Argument To Dispute Facts | 8, 10, 16, 17, 21, 23, 24, 26, 27, 28, 29, 30, 32, 33, 35, 36, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 53, 54, 59, 60, 61, 62, 65, 68, 69, 70, 71, 72, 73, 75, 77, 83, 84, 85, 86, 88, 89, 90, 92, 93, 94, 95, 99, 100, 101, 104, 117, 118, 126, 133, 168, 179, 186, 192, 195, 197, 204, 205, 206, 207, 209, 219, 221, 223, 224, 230, 232, 241, 246, 249, 253, 254, 256, 260, 261, 262, 263, 265, 266, 267, 275, 277, 278, 279, 280, 281, 282, 283, 284, 296, 317 |
| Paragraphs In Which Defendant Improperly Disputes Facts By Providing Additional, Irrelevant Information That Does Not Controvert The Alleged Fact | 1, 4, 8, 10, 15, 16, 18, 20, 21, 23, 24, 26, 27, 28, 29, 30, 32, 33, 35, 36, 39, 40, 42, 43, 44, 45, 46, 47, 48, 49, 50, 53, 54, 55, 56, 57, 59, 60, 61, 62, 65, 67, 68, 69, 70, 71, 72, 73, 75, 77, 80, 83, 84, 85, 86, 88, 89, 90, 92, 93, 94, 95, 96, 98, 99, 100, 101, 112, 113, 115, 119, 121, 122, 126 , 128, 132, 150, 153, 154, 168, 172, 173, 174, 175, 178, 185, 186, 221, 223, 227, 228, 230, 232, 233, 234, 236, 253, 255, 256, 257, 260, 263, 265, 266, 297, 300, 317 |

It further should be noted that although the University had to respond to 33 fewer Paragraphs than EEOC did, at 81 pages, the University's Opposition is nearly twice the length of EEOC's Opposition.  That contrast would be even greater had the University not single-spaced all of its responses to EEOC's fact assertions.  If EEOC's Opposition fails to be concise, the University's Opposition doubly fails in that regard.

Nor is the University's Opposition in the instant case the first time the University has employed the foregoing features in its own opposition statement in summary judgment briefing. In still another case before this Court, *Waggel v. George Washington University*, No. 1:16-cv-01412, the University employed similar methods in its opposition statement.  *See* Ex. H, *Waggel* Doc. 36-1 (Feb. 13, 2018).  In that case, the University included extensive explanations, caveats, and other argument in the numbered paragraph with its response to most of the plaintiff's assertions.  *See id.* The University also cross-referenced paragraphs of its own statement of undisputed material facts instead of providing the record citations directly in the responsive paragraph in the opposition statement.  *See*, *e.g.*, *id.* at ¶¶ 3, 6, 7, 10, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 31, 33, 35, 37, 38, 45, 65, 67, 68, 69, 91.  In one paragraph, the University incorporated by reference its Memorandum of Points and Authorities and statement of undisputed material facts. *See id.* at ¶ 20.  The University also reasserted responses contained in previous responses within the opposition statement.  *See*, *e.g.*, *id.* at ¶¶ 4, 70, 78, 84, 86, 90, 91.  It denied assertions without citing any supporting record citation but arguing only that the material cited by the plaintiff did not support the fact assertion the plaintiff made.  *See*, *e.g.*, *id.* at ¶¶ 29, 30.  It also disputed the materiality of assertions,  *see*, *e.g.*, *id.* ¶¶ 16, 44, 52, 64, 66, 71, 85, as well as disputed potential inferences that may be suggested by the plaintiff's assertions, *see*, *e.g.*, *id.* ¶ 42.

Further, the University failed to confer in good faith with EEOC about this motion. The University contacted EEOC for the first time about its purported issues with EEOC's filing on Friday, February 10, 2023 at 4:21 PM. Ex. I (February 10, 2023 Email to EEOC). Defendant's email contained only one paragraph addressing the purported deficiencies. *Id.* That paragraph did not contain any references to specific paragraphs of EEOC's filing or details about the alleged deficiencies, beyond conclusory statements. *Id.* EEOC asked the University to provide examples of the alleged deficiencies so that the parties could meaningfully confer and sent EEOC's availability for a conferral. Ex. I (February 10, 2023 and February 13, 2023 Emails from EEOC). In the afternoon on February 13, 2023, Defendant sent EEOC a chart listing hundreds of paragraph numbers it claimed were deficient. Ex. I (February 13, 2023 Email to EEOC). Defendant's chart listed four types of purported deficiencies and the paragraphs that the University claimed fell within each category. *Id.* The University listed some paragraphs under multiple categories, and the chart did not provide further explanation as to which portion of the paragraph the University considered to be deficient. *See e.g., id.* (listing paragraph seven under three of the four categories). EEOC provided a letter responding to the University's assertions and proposing potential ways to resolve the dispute on the afternoon of February 15, 2023. Ex. I (EEOC's February 15, 2023 Letter). EEOC's letter sought clarification from the University about its chart and its authority for filing a motion to strike as well as the alleged Local Rule violations. *Id.* EEOC also detailed, with examples and references to specific paragraphs, its disagreement with the University's assertions. *Id.* EEOC's letter also included proposed avenues for resolving the dispute. *Id.* Counsel then conferred by phone that afternoon, at which time the University informed EEOC that it would be filing its motion to strike unless EEOC withdrew its opposition to the University's statement of facts, sought permission from the Court to file a new opposition, and agreed to an extension of

time for the University to file its opposition to EEOC's motion for summary judgment and its reply in support of its own motion for summary judgment.  *Id.*  The University confirmed its position via email a few hours later.  Ex. I (February 15, 2023 Email to EEOC).  Despite the University's unwillingness to consider any alternative avenues for resolving the dispute they raised, EEOC provided another response outlining its concerns with the University's stance on this issue, particularly regarding the way in which it conflicted with the University's own prior filings in another case.  Ex. I (February 16, 2023 Email from EEOC).  EEOC further explained that the University had not provided legal support for what it was requiring EEOC to do to resolve the dispute and that the Commission had concerns about simultaneously addressing the University's concerns and complying with this Court's orders requiring filings to be concise.  *Id.*  The University responded less than an hour later and maintained its position that it would file its motion to strike.  Ex. I (February 16, 2023 Email to EEOC).  In response, EEOC again sought to confer with the University regarding potential resolution of the dispute and reminded the University of Local Rule 7(m)'s requirement that the parties attempt to narrow the areas of disagreement. Ex. I (February 16, 2023 Email from EEOC).  The University again summarily dismissed EEOC's concerns and reiterated that it would be filing its motion to strike. Ex. I (February 16, 2023 Email to EEOC).

The University's unwillingness to meaningfully confer with EEOC does not reflect good faith.  The Local Rules require the parties to confer in good faith to attempt to narrow the areas of disagreement.  Local Rule 7(m).  The University refused to meaningfully engage with EEOC regarding EEOC's concerns or requests for additional information.  *See* Ex. I.  And after asserting objections to the majority of EEOC's opposition, it refused EEOC's proposed attempts to limit the number of paragraphs at issue.  *Id.*  The University's take-it-or-leave-it approach does not meet

the good faith conferral requirements of the Local Rules and shows that the University did not

engage in meaningful efforts to prevent the need to file this motion or to limit the scope of the

motion.

**IV.    The University's Motion to Strike should be denied.**

      **1.    EEOC provided precise citations to the record to support its disputes.**

      The University's accusation that EEOC did not provide appropriate citations to the record

to support its disputes is illusory and unfounded.  Of the 114 paragraphs for which the University

contends EEOC did not provide appropriate record citations, EEOC did, in fact, cite record

material in support of its disputes in 102 of them, by directly citing the record material in the

paragraph (*see* EEOC OPP, Doc. 134-2, ¶¶  33, 34, 35, 39, 41, 51, 52, 62, 63, 94, 96, 111, 112,

114, 115, 117, 132, 181, 195, 198, 200, 203, 269, 304), referring in the paragraph to earlier

paragraphs of the Opposition and the record citations contained therein (*see* EEOC OPP, DOC

134-2, ¶¶ 12, 19, 26, 28, 31, 32, 38, 40, 49, 76, 85, 88, 89, 90, 93, 104, 113, 116, 119, 121, 128,

129, 131, 133, 134, 135, 141, 147, 157, 158, 175, 184, 186, 188, 199, 201, 204, 206, 208, 209,

211, 212, 213, 214, 219, 222, 226, 227, 232, 237, 265, 266, 270, 271, 277, 282, 285, 286, 287,

289, 301, 302, 303, 306, 314, 342, 343), or referring in the paragraph to specific paragraphs of

EEOC's own SOF that contain the precise record citations upon which EEOC relies (*see* EEOC

OPP, DOC 134-2, ¶¶ 27, 42, 80, 81, 156, 185, 193, 221, 224, 259, 267).  By providing cross-

references to earlier paragraphs within the Opposition and the facts and record citations identified

therein, EEOC ensured that its Opposition was concise instead of restating the same relevant facts

and their citations again and again throughout the Statement.  EEOC's cross-references to its SOF

similarly serve the requirement of providing a concise opposition statement.  These types of

common-sense shorthands are neither a violation of the court's rules nor egregious conduct that

warrants striking an opposition statement. *See* Ex. C, *Bura* Doc. 110, part B, ¶¶ 79-80, 83, 89, 93, 97, 101, 102 (incorporating by reference part A, "Genuine Issues Remaining for Trial," ¶¶ 12, 13, 14, 15, 16, 17); Ex. E, *Bura* Doc. 120-1, ECF p. 4-5 n. 5.

Further, in six of the paragraphs the University complains of, EEOC referred to the material *the University* cited in support of its assertion, explaining that such material did not actually provide support for the assertion (*see* EEOC OPP, DOC 134-2, ¶¶ 7, 9, 163, 196, 324, 328), as EEOC was permitted to do by the Federal Rules governing summary judgment. *See* Fed. R. Civ. Proc. 52(c)(1)(B) advisory committee note—2010 amendment ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. One party, without citing any other materials, may respond or reply that materials cited to dispute or support a fact do not establish the absence or presence of a genuine dispute."). Thus, in paragraph 7 of EEOC's Opposition, for example, EEOC properly disputes whether the material cited by the University supports the assertion that Nero's executive assistant would perform duties "such as" those listed in the incomplete selections from the job posting that are quoted in the University's assertion. In other words, by leaving out other duties that are listed in the posting, the University's assertion of fact provides an incomplete picture of the type of duties the posting indicated the executive assistant would provide and, therefore, also suggests a description of Williams' work that is incomplete and inaccurate. As such, EEOC's concise statement that "Defendants assertion does not accurately or completely describe Williams' work," is directly relevant to Defendant's assertion and bears little resemblance to the descriptions, "in lengthy detail," of "the contextual and structural background surrounding Defendant's stated facts" that the Court noted was inappropriate in *Gibson v. Office of the Architect of the Capitol*, No. 00-cv-2424, 2002 WL 32713321, at *1 n. 1 (D.D.C. Nov. 19, 2002) (Kollar-Kotelly, J.).

Ultimately, there are only a handful of paragraphs the University complains of that do not contain or refer to any record citations. *See* EEOC OPP, DOC 134-2, ¶¶ 1, 3, 69, 70, and 169. In these few paragraphs where EEOC did not rely on any record material for its dispute, none was cited. *See* LCvR 7(h)(1) (requiring only "references to the parts of the record relied upon to support the statement"). As a matter of candor to the court, however, EEOC nonetheless stated its dispute. *See* D.C. R. Prof. Conduct 3.3(a)(1) ("Candor to the Tribunal. (a) A lawyer shall not knowingly: (1) Make a false statement of fact or law to a tribunal…."). EEOC recognizes that, by operation of the Local Rule, those factual assertions for which EEOC did not rely on record support may be deemed admitted for purposes of the court's summary judgment determination. However, EEOC's identification of those few disputes for which it does not rely on record support is neither a violation of the Local Rule, nor a violation of this Court's order, nor egregious conduct, and it therefore does not warrant striking EEOC's entire Opposition or deeming all facts in the University's SOF admitted. *See Burke*, 286 F.3d at 518; Ex. B, *Winmar* Doc. 35-1, ¶ 10; *Winmar*, 233 F. Supp. 3d at 64 n. 7; Ex. C, *Bura* Doc. 110, part B, ¶¶ 14, 15, 73, 76, 78, 81, 92, 105, 135, 137; Ex. E, *Bura* Doc. 120-1, ECF p. 4-5 n. 5.

In claiming that EEOC did not provide appropriate record citations, the University largely argues not about the absence of record citations in EEOC's Opposition but, rather, whether the record material EEOC has cited establishes genuine disputes of fact. The University's arguments in this regard are likewise unfounded.

- The University complains that the pages of Williams' transcript EEOC cited to support EEOC's stated dispute with the University's assertion No. 41 do not substantiate the dispute. But this is incorrect. The University's assertion was that "One of William's 'principal responsibilities' was planning Nero's travel, including booking flights and hotels and

scheduling taxis, Ubers, or rental cars."  Notably, the University's assertion did not state, "including *but not limited to* booking flights and hotels and scheduling taxis, Ubers, or rental cars."  Therefore, EEOC explained in response that EEOC's dispute with this assertion was that Williams' principal responsibilities relating to planning travel were not limited booking and scheduling travel reservations.  The testimony EEOC cited, at pages 33 through 37 of Williams' transcript, plainly substantiates this dispute, as Williams repeatedly testified that these planning duties also included preparing briefings about donor background and properly identifying the transportation options that would meet Nero's needs during a trip.

- The University complains that EEOC responded to the University's assertion No. 42 by disputing it in part and stating that "EEOC disputes Defendant's assertion that Williams' job was largely clerical."  The University argues that it "made no assertion that Williams' job was 'largely clerical' in Paragraph 42," and complains that EEOC is engaging in improper argument by responding as it did.  But the University's own argumentative statement of facts necessitated EEOC's response.  The University's Paragraph 42 is one of 60 paragraphs the University placed under the argumentative heading, **"Williams's Duties as Executive Assistant Were Largely Clerical,"** in an apparent effort to support that argument.  In EEOC's response to Paragraph 42, therefore, it was appropriate for EEOC to dispute that the testimony the University quoted in its Paragraph 42 assertion supports the University's overarching assertion that Williams' duties were largely clerical.  EEOC's concise, single-sentence statement directly disputing the University's own argumentative assertion the Williams' duties were largely clerical is a far cry from *Robertson v. Am Airlines*, 239 F. Supp. 2d , 8-9 (D.D.C. 2002), where the Statement at issue contained no record citations at all.  Further, given the

sweeping nature of the University's overarching assertion, EEOC properly cited to extensive record material that substantiates its dispute with that assertion.

- The University complains that EEOC disputed in part the University's Paragraph 49 assertion that "Nero testified that Williams' role with respect to budgets was to submit expenses for reimbursement and confirm that those expenses were paid from the correct budget," arguing that EEOC should have done nothing more than admit that the University correctly summarized Nero's testimony on this point. EEOC disputes, however, that what Nero testified to was an accurate description of Williams' role with respect to budgets and so responded, "This mischaracterizes and diminishes Williams's role working on budgets." In doing so, EEOC isolated the material portion of the University's assertion – the substance of Nero's testimony, not the fact that Nero testified to it – and responded to it by stating EEOC's dispute. As Williams' budgetary responsibilities were far broader and far more complex than what Nero said they were, EEOC cited to extensive record material substantiating its dispute by reasserting its responses, including the record citations therein, in several earlier paragraphs in the Opposition Statement. *E.g.*, Ex. 8 to Sappington Decl., "the Athletics 2016 Desk Audit Questions," cited in EEOC's Opposition paragraph 22, which states that Williams managed 4 budgets that required finding 3-8% cost savings; EEOC SOF, Doc. 134-1, ¶¶ 55-70 (cited in EEOC's Opposition paragraph 47), which cited extensive record material to support assertions, *inter alia*, that Williams managed three budgets with combined total value in excess of $1.5 million; that Williams' budgetary responsibilities included five-year forecasting, which required analyzing past department expenses and projecting future department expenses, quarterly budget reviews, and monthly and weekly reconciliations; that Williams trained the Directors of Basketball Operations on how to conduct their five-year forecasts and reviewed

26

and corrected their work; and that Williams managed the completion of the budget planning template for the Athletics Department as a whole, assuring that appropriate parties appropriately executed their duties.

- The University complains that EEOC disputed University assertion No. 196 by saying it mischaracterizes Williams' deposition testimony, and the University quotes a portion of Williams testimony wherein Williams was asked "Ms. Kayer specifically told you you should apply for the job, correct" and answered "yes."  But the University ignores the explanation of its dispute that EEOC provided.  EEOC admitted "that Kayer told [Williams] she should apply."  EEOC OPP, DOC 134-2, ¶ 196.  What EEOC disputed was the University's assertion that "Williams previously had conveyed her interest in the Special Assistant role to Kayer." Williams did not testify that she conveyed her interest in the role to Kayer.  As EEOC stated in its Opposition, she testified only that she "spoke with" Kayer about the role.  The two are not the same, and page 18 of Williams' transcript, cited by both the University and EEOC, substantiates EEOC's dispute.  Williams was asked, "Now, you spoke with Kaithlyn Kayer in human resources about this job opening of special assistant, correct," and Williams answered, "Yes."  Williams was neither asked whether she "conveyed her interest in" the job to Kayer, nor did she testify to as much.

The University's disagreement as to whether the record materials relied upon in these and other paragraphs in EEOC's Opposition establish any genuine disputes of material fact is not properly asserted in a motion to strike EEOC's Opposition, and it certainly does not warrant striking the Opposition; it belongs in a reply brief on the merits.  The University's disagreement in this regard simply reflects one of the determinations the Court must make in deciding the University's motion for summary judgment—whether "there is no genuine dispute as to any material fact."  Fed. R.

Civ. Proc. 56(a).  The University having articulated those facts it claims are material and are not in dispute, and EEOC having identified which of those facts EEOC contends are not material or are not in dispute, and both sides having cited record material for their positions, the parties have done what they are called upon to do to crystallize for the Court the material facts and relevant portions of the record, so that the Court may efficiently and effectively resolve the differences in the parties' positions and determine, in deciding the summary judgment motion, whether there is any genuine dispute as to any material fact.  *Id.*

*Wilkins v. District of Columbia*, Civ. A. No. 17-884, 2019 U.S. Dist. LEXIS 134308 (D.D.C. Aug. 9, 2019) does not counsel otherwise.  In *Wilkins*, the problems the Court articulated with the statement of facts that it struck were that it included extensive legal argument; at 67 numbered paragraphs (each containing multiple fact assertions) compared with the defendant's 29, it was not concise; and it included facts whose materiality to the defendant's motion for summary judgment were "not readily apparent," such as paragraphs that consisted "entirely of images." *Wilkins*, 2019 U.S. Dist. LEXIS 134308, at *9-13.  Moreover, it is not appropriate to look to *Wilkins* for guidance on whether the Court may strike an opposition statement responding to a movant's statement of undisputed material facts, as that is not what was stricken in *Wilkins.*  In *Wilkins*, the Court struck the plaintiff's own "Statement of Undisputed Material Facts," which was an extraneous document that, as the Court noted, the plaintiff, not having moved for summary judgment, need not have filed at all.  *Id.*, at *1, *3, *13.  The Court expressly stated that in evaluating the plaintiff's opposition to summary judgment, it *would* consider the plaintiff's separate "Defendant's Statement of Undisputed Material Facts with Plaintiff's Final Objections and Counterstatement of Facts," in which the plaintiff had "disputed, or otherwise raised some issue with, nearly every paragraph in Defendant's Statement," such that striking the plaintiff's

extraneous Statement of Undisputed Material Facts would not "leave Plaintiff without factual material for his Opposition to Defendants' Motion for Summary Judgment." *Id.*, at *2, *13.  As such, the Court need not necessarily have found egregious conduct, as it must do here, to strike the statement. *See Burke*, 286 F.3d at 518.

### 2. Where EEOC disputes assertions "in part," EEOC explains which part is disputed.

The University's contention that EEOC failed to properly identify which parts of the University's assertions EEOC disputes and which part it admits when EEOC disputed an assertion "in part" is also meritless.  In each instance where EEOC disputed a matter in part, EEOC also explained precisely which part of the assertion EEOC disputes.  Although EEOC did not expressly state that it does not dispute all remaining portions of each such assertion, that much can be readily determined by operation of the Local Rule and this Court's order.  As such, EEOC sufficiently isolated which facts EEOC disputes while ensuring that its Opposition remained concise; it did not violate the Local Rule or this Court's order, nor did it engage in any egregious conduct, and striking EEOC's Opposition and/or deeming the facts in the University's SOF admitted are not warranted. *See Burke*, 286 F.3d at 518; Ex. C, *Bura* Doc. 110-1, part B, ¶¶ 11, 13, 76, 83, 92; Ex. E, *Bura* Doc. 120-1, ECF p. 4-5 n. 5.

Further, none of the specific examples of EEOC partial disputes that the University discusses in its Motion demonstrates that EEOC did not sufficiently explain EEOC's partial disputes.  In paragraph 38, the EEOC explained that what it disputes is that Williams "merely addressed envelopes or had a largely clerical role."  The EEOC's addition of "merely" to state its dispute indicates that EEOC does not dispute the assertion that Williams did address envelopes, but only that she "merely" did so.  (In addition, as explained above, the inclusion of the dispute about whether  Williams had a largely clerical role was necessitated by the University's

argumentative overarching assertion in the heading under which paragraph 38 was placed.) EEOC's response to University assertion No. 47 also expressly states what it is about the assertion that EEOC disputes. In assertion No. 47, the University stated that "Williams testified that her responsibilities for these three budgets included 'five-year forecasting' of Athletics Department expenditures." EEOC's response that "Williams' responsibilities for managing the three budgets were not limited to five-year forecasting" indicates that EEOC does not dispute that Williams testified that she was responsible for doing five-year forecasting for the three budgets; but EEOC disputes only any suggestion that Williams' responsibilities for managing budgets were *limited* to five-year forecasting. Likewise, with Paragraph 112, EEOC has stated what it disputes – any suggestion from the University's assertion that the folder was marked "Nero" and "Confidential" that such markings meant its contents were for Nero's eyes only. Nothing else stated in the paragraph is disputed.

### 3.    EEOC has not engaged in improper legal argument.

EEOC also did not engage in legal argument or any improper conduct by giving responses disputing that certain inferences can be drawn from the facts stated by the University. Neither the Local Rule nor the Court's order prohibits stating a dispute regarding the inferences suggested by a movant's assertion of fact. To the contrary, the potential inferences to be drawn from a fact assertion are information that is plainly relevant to the response to such an assertion. Accordingly, inclusion of such information in the correspondingly numbered paragraph is required by the Court's order. Doc. 111, ECF p. 2 ("The responding party must include any information relevant to its response in its correspondingly numbered paragraph."). Indeed, as described above, the University has argued such potential inferences in its own opposition.

Nor did EEOC violate the Local Rule or this Court's order by responding that certain of the University's fact assertions are not material.  To the contrary, it was EEOC's duty in responding to the University's SOF to assist the Court in isolating which facts are material and which are not.  *See Jackson*, 101 F.3d at 150 ("The procedure contemplated by the rule thus isolates the facts that the parties assert are material….").

Neither the denial of a potential inference suggested by a fact assertion nor the response that an asserted fact is not material is the type of response that courts in this circuit find to be improper.  *In Johnson v. District of Columbia*, No. 17-883, 2019 U.S. Dist. LEXIS 134306, at *9-10 (D.D.C. Aug. 9, 2019), the legal argument the plaintiff included in his statement of undisputed material facts (which was, as in *Wilkins*, an extraneous document that the plaintiff need not have filed at all), was nothing like a simple dispute over the inferences suggested by a statement of fact.  As noted by this Court, the plaintiff's statement included "both legal argument and legal authority," including statements expounding legal principals or applying law to facts with citations to case law and other legal authority.  *Id.* at 10 (quoting from plaintiff's statement, "the mere fact that an officer fears 'a hostile reaction in a neighborhood he did not consider police-friendly cannot substitute' for seizures and arrests without probable cause," and noting the assertion concludes with citation to *In re T.L.*, 996 A.2d 805, 811 (D.C. 2010)).  In *Robertson*, 239 F. Supp. 2d, 8-9, the defendant's "Statement of Material Facts Not in Genuine Dispute" contained no record citations at all.  Similarly, in *Hajjar-Nejad v. George Washington Univ.*, No. 10-626, 2013 U.S. Dist. LEXIS 207038 at *3-4, the plaintiff's responsive statement contained such extensive "extraneous, immaterial facts and legal argument" that it was 231 pages in response to the defendant's mere 27-page statement of facts, contained extended argument on matters such as the defendant's "discriminatory animus," and would have functioned to circumvent the page limit for

responsive memoranda had the court permitted it.  EEOC's Opposition contains nothing like the problematic material in any of these cases.

In contrast, this Court's ruling in *Bura v. George Washington University* makes clear that responses disputing the inferences suggested by an assertion of fact or disputing the asserted fact's materiality are neither violations of the Local Rule nor egregious conduct warranting striking the party's statement.  *See* Ex. C, *Bura* Doc. 110, part B, ¶¶ 68, 75, 79-80, 110 (contesting whether certain inferences could be drawn from the University's assertions), part B, ¶¶ 1-13, 15-22, 24-26, 47, 63-65, 82, 103-104, 106-107, 129-134, (contesting that the University assertion/s "lend[/s] any support to Defendant's Motion for Summary Judgment), part B, ¶¶ 51-57, 66-67, 69-72, 103-104, 129-134 (contending that the University's assertions are "irrelevant"); Ex. E, *Bura* Doc. 120-1, ECF p. 4-5 n. 5 (concluding the Court would consider the plaintiff's opposition statement in ruling on summary judgment, as the statement did enable the Court to decide the motion for summary judgment efficiently and effectively).

Indeed, the University's filings in this case and others make clear that the University's arguments here do not reflect the University's own good-faith interpretation of the Local Rule and this Court's order.  For example, the University complains that EEOC responded to the University's assertion that "Williams addressed envelopes for Nero and updated the contacts folder in his email" by stating that EEOC "disputes that Williams *merely* addressed envelopes or had a largely clerical role.  *See* EEOC OPP, DOC 134-2, ¶ 38 (emphasis added).  The University argues that this "response is impermissible argument against a possible inference to be drawn from the University's asserted fact, of a rejection of the fact itself," but the University uses exactly the same form of response to dispute inferences to be drawn from EEOC's assertions of fact multiple times in the University's Opposition.  *See*, *e.g.*, Univ. OPP, Doc. 142-1, ¶ 112 (responding to EEOC

assertion that "Nero promoted Aresco… and increased his salary" by stating "The University denies that Nero *unilaterally* promoted Aresco into that role or *unilaterally* increased Aresco's salary" (emphasis added)); ¶ 116 (responding to EEOC assertion that "Nero also awarded Aresco a $13,000 bonus" by stating, "The University denies that Nero himself *unilaterally* awarded Aresco a bonus" (emphasis added)).  Likewise, the University argues that EEOC engaged in impermissible argument by responding to a University assertion that "the 'special projects' on which Williams worked included sending out the Athletics Department's annual holiday card" by responding that EEOC "disputes Defendant's characterization of the work and inference that these are the only special projects for which Williams was responsible." *See* EEOC OPP, DOC 134-2, ¶ 68.  However, the University provided a similar response to EEOC's assertion that "When Athletics Department personnel presented Aresco with questions relating to HR protocols or guidance, he relayed them to Kayer"— The University responded that it "denies the allegations insofar as Paragraph 187 suggests that he relayed *all* questions 'relating to HR protocols and guidance' to Kayer".  Univ. OPP, Doc. 142-1, ¶ 187.  As noted above, the University also included numerous assertions in the University's own Opposition Statement that the facts asserted by EEOC are immaterial.  See Univ. OPP, Doc. 142-1, ¶¶ 52 and n. 1, 123, 124, 125, 127, 162, 163, 201, 202, 203, 237, 238, 259, 273, 274, 312, 319.  Further, as noted above, in *Waggel v. George Washington University*, the University provided similar responses disputing inferences suggested by the movant's assertions of facts and disputing the materiality of the facts asserted.  *See*, *e.g.*, Ex. H, *Waggel* Doc. 36-1, ¶¶ 16, 42, 44, 52, 64, 66, 71, 85.

> ### 4.    EEOC has not provided irrelevant or impermissible information in its responses to the University's assertions of fact.

EEOC has neither violated the Local Rule nor this Court's order by including concise statements of fact explaining EEOC's disputes with the University's assertions in EEOC's

correspondingly numbered paragraphs.  Again, EEOC was required by this Court's order to include in its correspondingly numbered paragraphs "any information relevant to its response." Doc. 111, ECF p. 2.  That is all EEOC has done in the exemplary paragraphs described by the University and all others that the University purports to take issue with.  That the University disagrees about what is relevant to EEOC's response does not provide grounds to strike EEOC's Opposition.  The University has had ample opportunity in its own briefings to explain why it believes material cited by EEOC is not relevant, persuasive, or dispositive.

The University's argument that EEOC's inclusion of material explaining its disputes with the University's assertions in the correspondingly numbered paragraphs of EEOC's Opposition warrants striking the Opposition is unfounded.  Indeed, the University has done the same, in the University's Opposition in this case (*see*, *e.g.*, Doc. 142-1, ¶¶ 40, 112, 113, 116, 133, 153, 168, 316.) and elsewhere (*see* Ex. H, *Waggel* Doc. 36-1, throughout).  For example, in the University's Opposition in this case, the University provided a 150-word response to Paragraph 40, which itself is only 14 words long, and its response includes argument that Williams provided "clerical support," relying on unsupported declarations.  The University's Motion to Strike must be denied.

## Conclusion

For all of the foregoing reasons, the EEOC respectfully submits that University's Motion to Strike should be denied in its entirety.

Respectfully Submitted,

*/s/ Jessi Isenhart*
Jessi Isenhart, Senior Trial Attorney
EEOC Cleveland Field Office
1240 E. 9th Street, Suite 3001
Cleveland, OH 44199
216-306-1121
jessi.isenhart@eeoc.gov
Counsel for EEOC

34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of March, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<span style="margin-left:40%;">*/s/ Jessi Isenhart*<br>Jessi Isenhart</span>